### FOTHERINGHAM v. ADAMS EXPRESS CO.

*(Circuit Court, E. D. Missouri, E. D.   September 24, 1888.)*

1. FALSE IMPRISONMENT—WHAT CONSTITUTES.
    For about two weeks plaintiff was constantly guarded by defendant's detectives without any warrant, and all his movements were under their control, he being repeatedly urged to confess his guilt, and examined in regard to the robbery in such a manner as to clearly show that he was regarded as a criminal, and that, if necessary, force would be used to detain him. *Held*, that these facts warranted a finding that plaintiff was unjustifiably deprived of his liberty.

2. SAME—DAMAGES—PUNITIVE—EXCESSIVE.
    In such a case it is within the discretion of the jury to award punitive damages, regardless of the existence of actual malice, but a verdict for $20,000 is excessive.[1]

At Law.   On motion for new trial.   34 Fed. Rep. 646.

Action by D. S. Fotheringham against the Adams Express Company. Verdict for plaintiff.

*C. P. & J. D. Johnson, Thomas B. Harvey,* and *H. M. Bryan,* for plaintiff.

*Martin, Laughlin & Kern,* for defendant.

THAYER, J.   With reference to the motion for a new trial which has been filed in this case and duly considered, it will suffice to say, that I entertain no doubt that the jury were warranted in finding that plaintiff

---

[1] As to the allowance of exemplary damages in actions for false imprisonment, and what are excessive damages in such actions, see Clarke v. Improvement Co., 35 Fed. Rep. 478, and note.

was unlawfully restrained of his liberty from about the 27th or 28th of October until the 10th of November following; that is to say, for a period of about two weeks. The testimony in the case clearly showed that during that period he was constantly guarded by detectives employed by defendant for that purpose; that he was at no time free to come and go as he pleased; that his movements were at all times subject to the control and direction of those who had him in charge; that he was urged by them on several occasions to confess his guilt, and make known his confederates; and that he was subjected to repeated examinations and cross-examinations touching the robbery, of such character as clearly to imply that he was regarded as a criminal, and that force would be used to detain him if he attempted to assert his liberty. The jury in all probability found (as they were warranted in doing) that during the time plaintiff remained in company with the detectives, he was in fact deprived of all real freedom of action, and that whatever consent he gave to such restraint was an enforced consent, and did not justify the detention without a warrant. It is manifest that the court ought not to disturb the finding on that issue.

The most important question that arises on the motion is whether the damages assessed are so excessive that the verdict ought to be set aside on that ground. It is apparent that the damages allowed are much greater than the actual damages plaintiff can be said to have sustained, solely in consequence of the false imprisonment. The verdict therefore cannot be justified on the assumption that it was intended to be merely compensatory. Without doubt the jury intended to inflict exemplary or punitive damages. The amount of the verdict can be explained on no other hypothesis. A question has been raised as to the right of the jury to award such damages in the absence of malice. It is urged that in the matter of depriving the plaintiff of his liberty without warrant, the defendant acted without malice, and that the jury have substantially so found by finding in defendant's favor on the counts for malicious prosecution. With reference to this contention it is only necessary to say that the right of the jury to assess punitive damages in this class of cases does not necessarily depend upon the existence of malice, using that term in its ordinary sense. Punitive damages may be awarded when a wrongful act is done willfully, in a wanton or oppressive manner, or even when it is done recklessly,—that is to say, in open disregard of one's civil obligations and of the rights of others. The cases on the subject show that in the matter of assessing damages for a false imprisonment, or for an assault or trespass, it is the duty of the jury to consider not only all the circumstances of aggravation attending the wrongful act, but in some measure, at least, the nature of the right that has been invaded, and the effect upon social order of permitting a wrong-doer to escape without substantial punishment, in case of a flagrant violation of the law and the rights of others. *Huckle* v. *Money*, 2 Wils. 205; *Beardmore* v. *Carrington*, Id. 244; *Merest* v. *Harvey*, 5 Taunt. 442; *Conrad* v. *Insurance Co.*, 6 Pet. 268; *Day* v. *Woodworth*, 13 How. 363; *Voltz* v. *Blackmar*, 64 N. Y. 440; *Drohn* v. *Brewer*, 77 Ill. 280; *Sherman* v. *Dutch*, 16 Ill. 283; *Mc-*

*Bride* v. *McLaughlin*, 5 Watts, 375; *Turnpike Co.* v. *Boone*, 45 Md. 344; *McWilliams* v. *Bragg*, 3 Wis. 424; *Green* v. *Craig*, 47 Mo. 90. I have no doubt that it was within the discretion of the jury in the present case to assess substantial damages as a punishment of the wrong-doer, and to deter others from committing like offenses. The plaintiff was taken into custody, originally, without a warrant, and was detained without even the color of legal process for such an unreasonable period that the wrong cannot be excused, under our system of government, by the plea that such arbitrary measures were necessary to discover the perpetrators of a great crime. Moreover, the jury probably found (as they may well have done) that the evidence disclosed some circumstances of oppression on the part of defendant's agents in the transaction, and a disposition on their part to override time-honored laws intended to protect persons from arbitrary arrests and imprisonment, as well as a reckless disregard of plaintiff's rights as a citizen. All of these considerations evidently had weight with the jury, and induced them to award exemplary damages.

While I am of the opinion that it was the right of the jury, if not their duty, to award such damages, yet I have not been able to conclude that the amount actually assessed was reasonable. The damages allowed appear to me to be excessive, notwithstanding the fact that defendant's wealth properly formed one element in assessing the same. The verdict is certainly very much larger than the verdicts that have usually been returned in this class of cases. If as large a verdict as the one now under consideration has ever been allowed to stand in an action for false imprisonment, the case has not been called to my attention, and probably no such case can be found. I am fully persuaded that in so far as the damages are concerned, the verdict would not commend itself at first blush, or on careful consideration, to the judgment of dispassionate men fully conversant with all the circumstances of the case, and for that reason I am of the opinion that it ought not to stand for the full amount assessed by the jury. But as the case consumed 15 days in the trial, and was probably conducted at great expense to the litigants, and as no exceptions, other than as to the amount of the damages, can fairly be taken to the verdict, a second trial ought to be avoided, if possible. I shall accordingly adopt the practice of permitting the plaintiff to remit a portion of the damages, if he so elects. Precedents exist for such practice, even where punitive damages are involved. *Burkett* v. *Lanata*, 15 La. Ann. 337 If plaintiff elects to remit at least 40 per cent. of the verdict, that is to say, the sum of $8,000, within the next five days, the motion for a new trial on the first count will be overruled, but otherwise it will be sustained.

The motion for a new trial addressed to the second and third counts of the petition, on which a verdict was returned in defendant's favor, will in any event be overruled.