Israel W. Wool, Plaintiff-Appellant, v. Solar Aircraft Company, a Corporation, Defendant, Fairbanks Morse & Company, a Corporation, Defendant-Appellee.

### Gen. No. 48,820.

First District, First Division.

February 13, 1964.

Rehearing denied March 16, 1964.

Schmetterer & Schmetterer, of Chicago (Samuel Schmetterer and Jack B. Schmetterer, of counsel), for appellant.

William S. Schwab and Bernard H. Sokol, both of Chicago, for appellee.

MR. PRESIDING JUSTICE ENGLISH delivered the opinion of the court.

In this appeal, plaintiff seeks reversal of the trial court's decision adverse to him on a motion for summary judgment filed by defendant Fairbanks, Morse & Company.[*]

---

[*] We shall refer to Fairbanks, Morse & Company as the defendant. The other defendant, Solar Aircraft Company, appears not to have been served with summons, and has taken no part in this appeal.

---

**[*] See Callaghan's Illinois Digest, same topic and section number.**

Plaintiff, as an owner of shares of Solar Aircraft Company, brought a stockholder's derivative action, and in response to this complaint defendant filed a motion for summary judgment accompanied by affidavits to which plaintiff filed a counteraffidavit. An amended complaint was filed, and, by leave of court, the motion was permitted to stand thereto.

In his amended complaint plaintiff alleges that he purchased 500 shares of Solar stock on November 27, 1959. He states that he is suing on behalf of himself and 4300 others who were stockholders at the date of his purchase, at which time the stock was listed on the New York and Pacific Stock Exchanges and actively traded. Plaintiff also asserts that International Harvester Company now claims to own 98% of the stock of Solar and regards the latter as its subsidiary.

The transaction of which plaintiff complains is the sale to Solar by defendant of 124,000 shares of Solar for $2,652,360, which transaction he avers was not completed until on or about December 31, 1959. Plaintiff says this purchase was not authorized by the by-laws of Solar, was not submitted for the approval of stockholders as it should have been, constituted preferential treatment of defendant, and had the effect of an unauthorized reduction of capital by Solar. Plaintiff also states that defendant knew that its conduct was illegal, fraudulent and tortious.

Plaintiff further alleges, on information and belief, that the transaction in question was part of a plan by which International Harvester acquired 98% of the 576,752 shares of Solar outstanding in early 1961. The recovery sought was the amount paid by Solar to defendant ($2,652,360) plus interest.

Plaintiff's amended complaint also stated that the facts and documents to support his complaint were in the possession of Solar, International Harvester, the Continental Illinois National Bank & Trust Co. and defendant, and that he would seek discovery of those

matters through the court before trial, as they were otherwise not available to him.

The most significant point raised by defendant's motion for summary judgment asserts that the transaction between Solar and defendant for the purchase and sale of the 124,000 shares of Solar stock was completed on November 25, 1959, that this date was prior to the date on which plaintiff purchased his shares; * and that, in consequence, plaintiff is barred from bringing the action by Section 45a of the Business Corporation Act. (Ill Rev Stats 1957, c 32, § 157.-45a.) This statute provides:

> *No action shall be brought* in this State by a shareholder in the right of a domestic or foreign corporation *unless the plaintiff was a holder of shares* or of voting trust certificates therefor *at the time of the transaction of which he complains,* or his shares or voting trust certificates thereafter devolved upon him by operation of law from a person who was a holder at such time. (Emphasis supplied.)

The principal affidavit filed in support of defendant's motion for summary judgment was that of George W. Gardes, corporate secretary of Solar. He stated that part of the stock in the questioned transaction was the subject matter of a lawsuit brought by Solar against Fairbanks Morse and another corporation in the United States District Court in Philadelphia; that in early November, 1959 a New York securities firm offered to sell to Solar the 124,000 shares of its stock then owned by Fairbanks Morse, including the 94,000

---

* Plaintiff's amended complaint alleges that he acquired 500 shares of Solar by purchase on November 27, 1959.

The affidavit of Hayden W. Ingalls, filed in support of defendant's motion, stated that he was the Stock Transfer Agent of Solar and that his records showed plaintiff to have become the registered owner of 500 shares on December 17, 1959.

shares involved in the Philadelphia lawsuit, at a price of $21.39 per share. His affidavit stated further that on November 23, 1959 Solar accepted the offer and caused the purchase price of the shares to be deposited with Chase Manhattan Bank in New York; that on November 25, 1959 the stock certificates for the 124,-000 shares were delivered to Solar's agent at the Continental Illinois National Bank and Trust Company in Chicago; and that Solar on that date caused the purchase price to be transmitted from the New York bank to the Continental bank in Chicago for disposition by Continental as directed by the seller. This affidavit was verified on the oath of the affiant without qualification of any kind.

Plaintiff filed an amended counteraffidavit in which he reasserted his purchase of 500 shares on November 27, 1959 and explained the details thereof. His affidavit then continued with a statement on information and belief that the transaction complained of between Solar and defendant was not completed until after December 17, 1959 and that it was part of a plan whereby International Harvester acquired 98% of Solar's stock. The counteraffidavit also restated plaintiff's need for discovery proceedings to acquire the information and documents to substantiate his amended complaint.

The record does not disclose that plaintiff made any motion to the court to compel discovery from defendant or anyone else during the four months the suit was pending.

On February 2, 1962 the court sustained defendant's motion for summary judgment. From this order plaintiff appeals on two grounds: First, he asserts that the documents on file raised a question of fact as to whether plaintiff was a "holder of shares" at the time of the transaction of which he complained, within the meaning of the section of the Business Corporation Act quoted above; alternatively on this point,

88

plaintiff argues that the hearing on the motion for summary judgment should have been continued to permit plaintiff to take depositions and arrange for other discovery in order to substantiate his claim. Second, plaintiff contends that, despite the statutory restriction, he may maintain his action based on the principle of a continuing effect of the wrongful transaction which had occurred prior to his acquisition of stock.

From our review of the pleadings and affidavits in this case we conclude that there was "no genuine issue as to any material fact." (Ill Rev Stats, 1955, c 110, § 57(3).)

As against the positive, detailed averments of fact in the Gardes affidavit, the affidavit of plaintiff was made on information and belief and contained the further concession by plaintiff that he would have to take depositions in order to come into possession of the facts upon which his complaint was alleged to have been based. "A mere statement that the plaintiff is informed, or is informed and believes, puts in issue only his information and belief, and not the truth or falsity of the facts thus referred to." Murphy v. Murphy, 189 Ill 360, 366, 59 NE 796 (1901). See also Roberts v. Sauerman Bros., Inc., 300 Ill App 213, 217, 20 NE2d 849 and 23 ILP, Judgments, § 75.

Plaintiff's argument that the hearing should have been continued to permit the taking of discovery depositions is also unfounded. He had permitted four months to pass after the filing of his complaint without taking any action in that regard and, in fact, made no request for a continuance at the time of the hearing. Certainly it was not the duty of the court to order such a continuance on its own motion.

Plaintiff also objects to the form of Gardes' affidavit, arguing that it does not comply with Supreme Court Rule 15 which requires that such an affidavit be made on the personal knowledge of the af-

fiant, shall not consist of conclusions, etc. We consider the affidavit to be sufficient as to both substance and form, and so hold, even though plaintiff is not in a position to raise this question here because he made no objection to the affidavit in the trial court. Kent v. Rhomberg, 288 Ill App 328, 332, 6 NE2d 271; Bonczkowski v. Kucharski, 13 Ill2d 443, 454, 150 NE2d 144.

■ Finally, plaintiff contends that his cause of action is not barred by section 45(a) of the Business Corporation Act because the transaction involved was a continuing one the effects of which were still being felt at and after the date on which he purchased his shares. His argument is that the transaction between Solar and defendant was part of a scheme whereby at a later date International Harvester acquired 98% of the stock. From this plaintiff concludes that the continuing harm resulting from the total transaction is a loss of marketability of his shares.

Plaintiff places his reliance upon Duncan v. National Tea Co., 14 Ill App2d 280, 144 NE2d 771. In that case the court traced the Illinois rule back through Goldberg v. Ball, 305 Ill App 273, 27 NE2d 575, to the leading case of Home Fire Ins. Co. v. Barber, 67 Neb 644, 93 NW 1024 (1903), which was relied upon in the Goldberg case. The Nebraska case contains this statement of the rule by Judge Roscoe Pound:

> The right of the stockholder to sue exists because of special injury to him for which otherwise he is without redress. If his interest is trifling, and the injury thereto of no consequence, he cannot sue to compel righting of wrongs to the corporation. . . . Hence there is obvious reason for holding that one who held no stock at the time of the mismanagement ought not to be allowed to sue, unless the mismanagement or its effects continue and are injurious to him, or it

90

affects him specially and peculiarly in some other manner. (93 NW 1024 at 1029.)

In the Duncan, Goldberg and Home Fire Ins. cases, the fraud or mismanagement and its continuing effects were spelled out in detail. In Duncan the complaint alleged that certain officers had violated their fiduciary duties to the corporation by a continuing conspiracy to defraud it for personal gain. Illegal loans to officers and directors, illegal stock transactions, secret profits and excessive salaries were alleged to have been part of a continuing course of conduct which began before plaintiffs purchased their stock and continued thereafter in specific instances. The case did not remotely resemble the single transaction which was completed before plaintiff purchased his shares in the case at bar. Goldberg and Home Fire Ins. are also far afield on their facts. Furthermore, in the case at bar there is no allegation in the complaint that the wrong alleged was a continuing one, this point having been raised for the first time in plaintiff's brief on appeal.

If plaintiff's charges relating to the reduction of marketability of his shares on account of the acquisition by International Harvester were to be considered as allegations of acts somehow fraudulent, they would be insufficient because alleged only upon information and belief. As stated by the court in Goldberg v. Ball, 305 Ill App 273, 280, 27 NE2d 575: "[I]f the allegations of fraud are upon information and belief, they cannot be sustained unless the facts upon which the belief is founded is set forth in the pleadings." As recited above, neither plaintiff's pleading nor affidavit averred an adequate factual basis concerning International Harvester's purchase of Solar stock.

The judgment of the Circuit Court is affirmed.

Affirmed.

BURMAN and MURPHY, JJ., concur.