Salvatore Campione, Plaintiff-Appellant, v. Henry C. Lytton & Company and Otis Elevator Company, Defendants-Appellees.

Henry C. Lytton & Company, Third-Party Plaintiff, v. Krahl Construction Company, Third-Party Defendant.

Gen. No. 49,328.

First District, First Division.

March 15, 1965.

Barbera & Friedlander, of Chicago (Joseph Barbera, John J. Milano, A. J. Hardiman and Dom J. Rizzi, of counsel), for appellant.

Baker, McKenzie & Hightower, of Chicago (Francis D. Morrissey, Michel A. Coccia and Philip J. McGuire, of counsel), for Henry C. Lytton & Company, appellee; Andrew J. Farrell and Anton J. Valukas, of Chicago, for Otis Elevator Company, appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court.

Plaintiff, Salvatore Campione, appeals from the entry of a summary judgment in favor of defendant, Otis Elevator Company, and from a directed verdict in favor of defendant, Henry C. Lytton & Company, at the conclusion of plaintiff's evidence. The suit was for the recovery of damages allegedly occasioned by the defendants' negligence and violation of the Structural Work Act (Ill Rev Stats 1963, c 48, §§ 60–69).

The complaint alleged that Lytton owned the premises and engaged Krahl Construction Company to do a certain portion of the construction and remodeling of the building; that plaintiff, an employee of Krahl, was engaged in certain portions of said construction work where Lytton owned, controlled and maintained a certain elevator which it caused, allowed and permitted to be used as a scaffold for workmen to stand on; that Lytton constructed, caused to be constructed and al-

148

lowed and permitted to be constructed certain scaffolding on top of said elevator which was also used by various workmen engaged in the construction and remodeling of said area; that the said elevator was operated by an employee, agent and servant of defendants Lytton and Otis for use as a scaffold by the workmen; that the said elevator was also used as a hoist for lifting materials; that it was the duty of Lytton and Otis, in the maintenance and use of the elevator, to exercise reasonable care and caution in the operation and control thereof and to exercise reasonable care and caution in the construction, inspection and maintenance and use of the elevator as a scaffold and of the scaffolding constructed on top of the elevator so that the elevator and scaffolding were reasonably safe and proper for use, and to exercise reasonable care and caution in enclosing or fencing the sides of the elevator shaft by substantial barriers or railing so that workmen, while using the elevator, scaffolding and shaft, would not be likely to fall as a result of any defective condition or negligent use of the elevator, scaffolding and shaft.

The complaint then charged Lytton with carelessly, negligently, unlawfully and wilfully failing to comply with the Structural Work Act; that as a result thereof the elevator, the scaffolding on top of the elevator, and the elevator shaft openings were dangerous and defective for use, as a result whereof plaintiff, while working on top of the elevator and scaffolding, was injured.

The complaint further alleged that while plaintiff was working on top, the operator of the elevator carelessly, negligently and improperly operated and controlled the elevator whereby it jerked and moved causing plaintiff to fall and sustain injuries.

Lytton, in its answer, admitted ownership of the premises and the contract with Krahl but denied the

other allegations as to liability. Otis answered, denied liability and filed a motion for summary judgment supported by an affidavit of L. R. Humbert, its assistant secretary, and the deposition of John Ekblom, an employee of Krahl. Plaintiff countered with an affidavit of his counsel setting forth testimony adduced from interrogatories and excerpts of depositions taken of Frank Wojciechowski, a Krahl employee, and of the plaintiff.

In Humbert's affidavit he stated that at no time was elevator number two operated by an employee, agent and servant of Otis for use as a scaffold by workmen; that at no time was it the duty of Otis to operate or control said elevator; and that at no time did Otis engage in the construction, inspection and maintenance and use of said elevator as a scaffold. Ekblom testified by deposition that he was sent to Krahl from the local union to operate the elevator on the Lytton job. He was working for Krahl. The elevator had been turned over to them to use while they were wrecking the front. It was manually operated with controls on the inside. He was on the job two or three weeks when the incident occurred. His duties were to run the elevator, to raise it, to have it at their disposal when they wanted it. It was used at the time for wrecking the fronts for the Krahl Company. New elevator fronts were being put in. He was on the job that day. Plaintiff was the labor boss for Krahl. He raised the car when plaintiff wanted it. He saw plaintiff fall. The elevator was then about eighteen inches or two feet above the floor. Nobody was present besides Campione and himself except one of "our laborers" named Frank. "The area was broken up—bricks, plaster, and things like that, on the floor beside a barricade which was built of wood about four or five feet around in front of the elevator and extending from floor to ceiling."

150

When the plaintiff fell Ekblom was sitting inside the car, alongside of the controls, right at the opening. The front of the elevator was removed and the carpenters had built a platform on the top thereof before the wrecking started. He saw the plaintiff come down the ladder and fall on the floor right in front of him. It was a regular wooden building ladder that was laying against the barricade. Plaintiff was hanging up a tarpaulin in front of the elevator so that as they were breaking the plaster and bricks down "they wouldn't fall down on their heads." He came down on the ladder from the top of the elevator and "when he came down he slipped and fell down on the floor." The elevator did not move at all. The juice was shut off. You would have to pull a switch to put it on. No one from Otis or Lytton was in the particular vicinity where the fall occurred. He saw no Otis employees doing any work on this shaft at the time. On cross-examination, in the deposition, he described the elevator as having most of its metal top removed and the said platform built thereon consisting of 2 x 10's. The front of the car (cab) and canopy were removed.

Plaintiff's counter affidavit alleged that Frank Wojciechowski, an employee of Krahl, by deposition testified that their work was to remove the front of the old elevators and that they had nothing to do with dismantling the old or putting in new elevators . . . "that was sombody else's job"; that Lytton made answers to interrogatories giving the names of Otis Elevator Company, Krahl Construction Company, Hyre Electric Company and General Floor Company as contractors doing work on the premises. The counter affidavit further alleged that plaintiff, in his deposition, testified as follows:

Q. Do you know what caused the car to move?
A. Well, I asked the man after I fell.

Q. What did you ask?

A. The elevator man—the fellow that moved the car, and I asked if the Otis guys—and he says, when they work on the cables—because they rush—that people, those people, work at the same time I work on the car. They work on the cables the same minute when I fall, before I know it. I can't stop them. I have no authority to stop those people—they work in the penthouse the same car I was in.

Q. Did you see them do that?

A. Yes.

Q. You saw them work on the cables of the car you were using?

A. Yes, on top.

Q. At that particular time?

A. At that particular time.

Q. Did you see them, at the time you fell, working on the penthouse, on the cables?

A. Yes.

The counter affidavit further alleged that Otis in answer to interrogatories gave names of a foreman, four mechanics and four helpers as their employees working on the premises on the day in question and immediately prior thereto.

The court sustained the motion for summary judgment and dismissed the cause as to Otis.

■■ Plaintiff attacks the affidavit of L. R. Humbert as insufficient, without weight and containing conclusions in violation of Supreme Court Rule 15. (Ill Rev Stats 1963, c 110, § 101.15.) This point is raised for the first time on appeal. The affiant, being the assistant secretary for Otis, on oath averred that if called upon to testify in the case he would testify to the facts therein alleged. No question being raised in the trial court to dispute this we must assume he

152

could so testify. A similar situation was considered in Wool v. Solar Aircraft Co., 47 Ill App2d 84, 90, 197 NE2d 477 (1964), and we can only repeat our observation there. "We consider the affidavit to be sufficient as to both substance and form, and so hold, even though plaintiff is not in a position to raise the question here because he made no objection to the affidavit in the trial court."

Plaintiff charged Otis with a duty under the Structural Work Act in the maintenance and use of the elevator, to exercise care and caution in the operation, control and inspection of the elevator as a scaffold and of the scaffolding on top thereof so that the elevator would be safe and proper for use. He further charged Otis with a duty to use care and caution in enclosing and fencing the sides thereof, etc.

However, the facts disclosed in the motion for summary judgment failed to indicate that Otis was "in charge of" the work involving the violation or of the scaffolding involved in the work, since there is no evidence that it, in fact, had anything to do with the maintenance and use, operation, control, construction, or inspection of the elevator or the scaffolding on top thereof, or that it had anything to do with enclosing and fencing the sides thereof.

Furthermore, after setting forth in the complaint the duties owing under the Act by both defendants, plaintiff alleged "(T)hat notwithstanding the provisions of said Statute, the said defendant, Henry C. Lytton & Company, . . . failed to comply with the provisions of said Statute . . ."

The only other charge against Otis was that it operated the elevator in question by "an employee, agent and servant" who negligently caused plaintiff's fall. Neither the counter affidavit, answers to interrogatories nor depositions filed by him contain any evidence to support such contention, but on the con-

trary established the operator to be the servant of Krahl, his employer.

Section 57 of the Civil Practice Act provides that defendant may, at any time, move for summary judgment in his favor; that the opposite party may file counter affidavits and that the judgment sought shall be rendered forthwith if the pleadings, depositions and admissions on file, together with the affidavits, show no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. For the reasons stated, summary judgment and dismissal of Otis was properly entered.

In the trial of the cause against Lytton, William Krahl testified that Krahl Construction Company entered into a contract with Lytton to tear down partitions in the elevator shafts which constituted a part of an overall remodeling project on its elevators. The Krahl Company furnished its own employees, plaintiff included. Plaintiff was the only other witness to testify to the circumstances surrounding the incident. He said he was employed by Krahl for six years. For the past year he was working on the Lytton job as foreman with five labor employees under him. They were working on the partitions in the elevator shafts. In addition to directing the laborers in their work he would make lines in the shaft tile so that his men would know what was to be torn out. Work had been completed in elevator shaft number one about two months prior to the day of the occurrence and they had worked down from the twelfth to the third floor in elevator shaft number two where the incident occurred.

The elevator car was being used in doing this work. Krahl had constructed a plywood platform on the top of the manually operated elevator. He said there were two men who usually operated the elevator one of whom he knew as "John." John's job was to "run the

154

elevator up and down when we wanted it moved." John could have worked for Krahl. "I won't say yes and I won't say no." A fourteen foot wooden stepladder was used to reach the top of the elevator car. A wooden barricade was built in front of the work site to keep the public out. On the day in question plaintiff saw John in the elevator. He told Frank, a co-employee, to keep people from coming inside. "We don't want 250 people to get hurt, so you watch them, Frank." Sam, another employee was at the barricade. At that time the elevator was about two feet above "the first level." Plaintiff used the ladder to get to the elevator top and was marking the south wall. He was standing with the left foot on the ladder and the right foot on the elevator car when he lost his balance and fell to the floor. When he came to, he saw the elevator, which at that particular time was about a foot or fourteen inches "off the floor."

On cross-examination he said "when you ask me whether I saw the car move, I see the car move because I had my right leg because I lost control. No, it is not a fact that I lost my balance while on the ladder. I saw the car move because my leg, right leg going down and my left leg I had on the ladder. . . ."

At the conclusion of plaintiff's evidence the court sustained the motion for directed verdict in favor of Lytton.

Plaintiff contends that the elevator became an integral part of a scaffold upon which plaintiff was working on Lytton's premises. He argues that although Lytton might not have been technically in charge of the removal of the elevator shaft partitions, yet it was in charge of the scaffold to the extent that it owed the plaintiff an active duty as owner of the building to maintain the elevator car which was used as a scaffold in conjunction with the stepladder. In support of this contention, plaintiff cites Skinner v. United States,

155

209 F Supp 424 (1962). In that case plaintiff's intestate, while painting hangar doors, was standing on a ladder which rested against the hangar door. The hangar door moved and plaintiff's intestate fell as a result of which he died. The court held the United States liable. But in that case it was stipulated that the control and movement of the doors of the hangar were exclusively in control of the United States Air Force personnel and that no other persons had or were permitted to have any control over the operation thereof. The evidence further showed that one of the Air Force personnel inadvertently operated the door thereby causing the plaintiff's intestate, and the ladder on which he was standing, to fall. In the instant case there is no evidence that Lytton controlled the movements of the elevator at the time of the occurrence. On the contrary the evidence indicated that Krahl, plaintiff's employer, had a barricade constructed and stationed men to keep people out. It was further indicated that Krahl used the elevator in shaft number two for two months and there was no testimony or evidence that Lytton's employees operated or used this elevator at any time during the tearing down operations.

Plaintiff contends further that Lytton entered into a contract with plaintiff's employer for work to be done on its premises and thus it knew the type of work to be done, and as owner of the building it owed him an active duty to see to it that the elevator car would not move without warning to him while it was used as an integral part of a scaffold. The mere fact of ownership of premises is not sufficient to establish liability under the Structural Work Act with respect to erection, repairing or painting. In Gannon v. Chicago, M., St. P. & P. Ry. Co., 22 Ill2d 305, 319, 320, 175 NE2d 785 (1961) the court stated:

Moreover, the plain words of the statute preclude plaintiff's interpretation. The act specifies, "Any owner, contractor, sub-contractor, foreman or other person having charge of the erection, construction, repairing, alteration, removal or painting of any building, bridge, viaduct or other structure within the provisions of the act, shall comply with all the terms thereof, . . ." It is inescapable from these words that the legislature intended to hold liable those named persons who are in charge of the work, and the words "or other person" were included to cover the situation where someone other than the named persons was in charge of the work, in order to prevent such person from escaping liability.

As aptly stated by the Federal court at p 88 of the first Schmid opinion (154 F Supp 81), antedating the Kennerly case, "It was not the intention of the legislature that the owner should be liable regardless of who was in charge of the work, but to hold the person in charge of the work responsible regardless of whether it was the owner, contractor, sub-contractor, foreman or other person having charge of the building project. This can be the only logical conclusion. If the legislature intended otherwise, certainly more appropriate and clearer and less ambiguous language could have been used."

And, at page 321:

Furthermore, in construing section 9 in its entirety, as we are obliged to do, we note that the legislature imposed civil liability only for "wilful violations." Wilful violations means knowing violations, and in the nature of things they can be perpetrated only by persons directly connected

157

with the operations, and not be virtue of mere ownership of the premises. The inclusion of this phrase in the act, therefore, further evidenced a legislative intention to impose the duty of compliance upon those having charge of the work.

■ In the instant case there was no evidence that Lytton exercised any control over the manner in which the work in question was being done so as to put it in a category of a person having charge of the work under the provisions of the Act. Plaintiff reasons that having furnished the instrumentality here involved— the elevator—Lytton was in charge of the instrumentality that was being used as an integral part of a scaffold. The Structural Work Act, when liberally construed, uses the words "erected and constructed" in the sense of being "furnished." Bounougias v. Republic Steel Corp., 277 F2d 726, 731 (7th Cir 1960); Oldham v. Kubinski, 37 Ill App2d 65, 185 NE2d 270 (1962).

■ The evidence in the instant case, however, taken in its aspects most favorable to plaintiff, established that Lytton parted with control of the elevator and the elevator shaft. There is no evidence that it exercised any control over or reserved the right to control the operation of the elevator after it had released it to Krahl. It fully appears that Krahl was in charge of the elevator and the elevator shaft for two months prior to the occurrence and that Krahl had adapted the elevator for use by it as a scaffold. We can see no basis in the evidence here to hold Lytton liable for a wilful or knowing violation of the Structural Work Act.

Finally, plaintiff contends that as owner of the building Lytton owed plaintiff an active duty as invitee to use due care and caution for his safety and to inform him of any defect in the elevator car and to keep the

elevator car in a safe condition. Although the complaint contains but one count and the thrust thereof was predicated on a violation of the Structural Work Act, plaintiff did allege that while he was working on top of an elevator and scaffolding the operator carelessly, negligently and improperly operated and controlled the elevator. But plaintiff furnished no proof that Lytton employed the operator nor what, if anything, the operator did.

Plaintiff relies on Snorgrass v. Sears, Roebuck and Co., 275 F2d 691 (1960) as determinative of Lytton's liability. In that case Sears owned and controlled a rope geared hydraulic elevator which was placed in motion or stopped when a rope or cable was pulled. It was necessary, when the elevator was stopped, to center it by lining up the yellow marker on the wall. This was required to prevent its creeping upward or downward and was characteristic of this type of elevator. The court held that Sears owed an invitee on its premises to use due care for his safety and particularly to inform him of the creeping action which was characteristic of this type of elevator and which could only be overcome by stopping it in a position where the corresponding marks on the cable and wall were not more than four inches apart.

This was not the situation in the case at bar. Here we have no evidence whatsoever as to what caused the elevator to move; as to any defect in or about the elevator which could cause the movement; or that Lytton in any way caused the car to move or knew of any defect, and having had an opportunity failed to correct it. The elevator was not in general use or in control of Lytton at the time or for some time prior to the incident.

In our opinion plaintiff failed to establish any factual question whereby a jury could render a verdict in

his favor and against Lytton. The trial court properly directed a verdict in its favor and the judgment is affirmed.

Affirmed.

BURMAN, P. J. and MURPHY, J., concur.