Melvin REMMICK, Plaintiff and
Respondent,

v.

William R. MILLS and Thomas Pinks,
Defendants,

and

William R. Mills, Defendant and Appellant.

W. Floyd LANG, Plaintiff and Respondent,

v.

William R. MILLS and Thomas Pinks,
Defendants,

and

William R. Mills, Defendant and Appellant.

Civ. Nos. 8453, 8454.

Supreme Court of North Dakota.

Dec. 17, 1968.

Rehearing Denied March 3, 1969.

William R. Mills, Bismarck, for appellant.

Vogel & Bair, Mandan, for respondents.

ROY A. ILVEDSON, District Judge.

These are two civil actions concerning conversion of personal property, to wit: stacked alfalfa hay. The issues are identical and the cases were consolidated for trial. In December 1963, a judgment of the District Court of Burleigh County quieted title to the East Half of the Northwest Quarter and lots 1 and 2 of Section 8, Township 138, situated in Burleigh County, in Isabel M. Perry. Prior to this, Herman Erling had occupied the land for several years as the grantee of a deed from a person who claimed title through a tax deed proceeding. While he was in possession, Herman Erling cleared thirty acres of the land and planted alfalfa in 1962. The appellant William R. Mills, was the tenant of Herman Erling in 1963, and when the District Court judgment quieting title in Mrs. Perry was entered, he relinquished his possession of the land. On January 22, 1965, the Supreme Court of North Dakota reversed the judgment of the District Court and determined that Herman Erling was entitled to have possession of the land restored to him until the issue of title was determined by the Department of Interior of the United States. Perry v. Erling, N.D., 132 N.W.2d 889.

While Mrs. Perry was in possession of the land during the year 1964, she entered into contracts through her agent, Attorney Milton K. Higgins, for the cutting and stacking of the alfalfa hay with the plaintiff Melvin Remmick for the first cutting, and with the plaintiff W. Floyd Lang for the second cutting. Mr. Remmick and Mr. Lang each agreed to cut and stack for one-half of the hay. Lang also contracted to purchase Mrs. Perry's half of the second cutting at the going market price when the cutting and stacking had been completed. In the fall of the year, after the alfalfa had been cut and stacked by the plaintiffs, the stacks were measured by Higgins, agent for Mrs. Perry, and Lang assisted him in the measurement of all the stacks including the hay that had been stacked by Remmick. There is no dispute in this case as to the tons or amount of hay involved.

In February 1965, shortly after the Supreme Court had reversed the judgment of the District Court and determined that Herman Erling was entitled to have possession of the land, his tenant, William R. Mills, returned to the property and found that the 1964 crop of alfalfa had been cut and stacked. Two very small loads had been hauled out by Remmick but otherwise all of the alfalfa was still in stacks on the premises. Mills instructed his hired man, Thomas Pinks, to bale all of the hay and haul it to Mills's farm.

Lang and Remmick commenced separate lawsuits against William R. Mills for the conversion of the alfalfa hay belonging to each of them. The complaints allege that defendant Mills was guilty of malice, and punitive as well as actual damages are requested.

A general denial was set forth in the answers to the complaints. Counterclaims were interposed in each lawsuit by Mills against the plaintiffs and against Isabel M. Perry as third-party defendant. No service of the summons was made upon

Isabel M. Perry in either action and upon motion the third-party complaints were dismissed as to Mrs. Perry. Each counterclaim set forth the history of the land and the court proceedings that had taken place, and each states, inter alia, that when Mills found the stacked alfalfa on the premises in February 1965, he believed that it belonged to Mrs. Perry. He had presumed that the persons who had cut and stacked the alfalfa had already been paid for their services; that Mrs. Perry owed Mills for the use of the property in 1964; and that he had ordered his employee, Tom Pinks, to bale the stacked alfalfa and haul it to Mills' farm. The counterclaims further allege that Milton Higgins, for himself and as agent of Lang, Remmick, and Isabel Perry, vandalized the baler that was being used on the premises and actual and punitive damages are requested.

In each action the plaintiff moved for dismissal of the counterclaim against him upon the ground that it related to a controversy between the defendant, Mills, and Mrs. Perry, who was not a party to the action by virtue of the dismissal of the third-party complaint, and upon the ground that the counterclaims failed to state a claim against the plaintiffs. The motions were granted and the district court signed orders dated June 20, 1966, dismissing the counterclaim in each action.

The plaintiff in each action moved for summary judgment against the defendant upon the ground that the plaintiff was entitled to judgment as a matter of law. The motions were based upon the verified complaint, the other pleadings, and the files and records in the case of Perry v. Erling of which the court was asked to take judicial notice.

The district court granted summary judgment in each action on the issue of liability and ordered that the issue pertaining to amount of damages due the plaintiff should be determined by a jury. The district court found in its findings of fact on summary judgment that Mrs. Perry was lawfully in possession of the land in the year 1964; that her tenants had cut and stacked the hay; that once severed, the hay involved in the lawsuits became personal property of the tenants; that this ownership was not affected by the subsequent reversal of the district court judgment in January 1965, by the Supreme Court; that the hay was admittedly taken by Mills; and that it was a wrongful conversion for which the plaintiff was entitled to damages. A trial was had before a jury on the issue of damages.

The jury did not bring in any verdict against the defendant Thomas Pinks. The evidence showed that he was only acting as agent and hired man of William R. Mills in the baling and hauling of the alfalfa. The jury awarded against appellant, Mills, $108 actual damages and $500 punitive damages in favor of the plaintiff Lang and $338 actual damages and $500 punitive damages in favor of the plaintiff Remmick.

(1) The appellant contends that the trial court erred in dismissing the counterclaims against the plaintiffs. Paragraph 12 of the counterclaim states:

"12. That Milton Higgins for himself and *as agent of W. Floyd Lang and Melvin Remmick* and Isabel Perry did in the middle of the night come upon the property and vandalize the baler being used for baling the hay." (Emphasis furnished.)

 The prayer for relief requests punitive and actual damages for "malicious mischief" of the "agent Milton Higgins in damaging the baler." Although the transcript of the testimony in the jury trial on the issue of damages indicates that both the appellant and the respondents considered Milton Higgins as agent of Isabel M. Perry, it is possible that there is other evidence of agency that was not produced because the counterclaims were dismissed by the trial court. If the allegations underlined above pertaining to the agency and the vandalizing are true, there would be

a claim against the respondents Lang and Remmick. The appellant would have the burden of proving such allegations and he is entitled to his day in court for such purpose. Section 12–41–10, North Dakota Century Code, defines malicious mischief and provides for punitive damages to be recoverable in a civil action.

For the reasons set forth above, we hold that paragraph 12 of the counterclaims of the defendant does state a claim and the orders of the district court dismissing the counterclaims are hereby set aside. We find no error in the dismissal of the other allegations of the counterclaims.

(2) In opposing the motions for summary judgment in the lower court the appellant argued that alfalfa is fructus naturales as distinguished from fructus industriales and as such it is the property of the owner of the land even though it had been severed while the owner was out of possession. In other words, as tenant of the owner, Mills claimed he had the right to seize and take the alfalfa stacked on the premises when the Supreme Court restored possession of the land to Erling in the case of Perry v. Erling, supra. There is sound reasoning as well as authority for finding alfalfa to be in the same class as ordinary crops and to be considered fructus industriales. See N Bar N Land & Livestock Co. v. Taylor, 94 Mont. 350, 22 P.2d 313; Superior Oil Co. v. Griffin, Okl., 357 P.2d 987, 87 A.L.R.2d 224. However, it is not necessary for this court to decide to which class alfalfa belongs. The alfalfa with which we are concerned became the property of the plaintiffs herein while Mrs. Perry was in legal and actual possession of the land.

Mrs. Perry was in possession of the land during the year 1964 by virtue of the judgment of the district court of Burleigh County. When a court has jurisdiction of parties and subject matter, its judgment, however erroneous, is a complete justification, until reversed or set aside, of acts done in its enforcement and a protection to those who acted in good faith in reliance upon it. 5 Am.Jur.2d Appeal and Error, Sec. 997, p. 424; Slabosheske v. Chikowske, 273 Wis. 144, 77 N.W.2d 497. Between the erroneous and the correct judgment, there is no distinction with regard to conclusiveness. Stuart v. Winslow Elementary School District No. 1, Navajo County, 100 Ariz. 375, 414 P.2d 976.

The plaintiffs were not involved in the land title controversy between Mrs. Perry and Erling. It is evident that when Mills returned to the land in February 1965, he had assumed that the stacked alfalfa belonged to Mrs. Perry. The Uniform Sales Act was in effect in this state when the plaintiffs herein entered into oral contracts in 1964 for the cutting and stacking of the alfalfa and when Lang purchased the landlord's share of the second crop. This court stated in the case of Breden v. Johnson, 56 N.D. 921, 219 N.W. 946:

"While these relations existed Lowry, in effect, sold the growing hay to the plaintiff, which sale, by operation of law, was accompanied by an irrevocable license to enter upon the land for the purpose of severing it. Did the plaintiff acquire title when he purchased it? Under well established and elementary principles of law, the effect of such contract is to transfer title to the purchaser. 1 Williston on Sales (2d Ed.) § 135. 'Goods,' according to the Uniform Sales Act, 'includes all chattels personal other than things in action and money. The term includes emblements, industrial growing crops, and things attached to or forming part of the land which are agreed to be severed before sale or under the contract of sale'. Section 6002a76, 1925 Supplement to the Compiled Laws of 1913. The contract in question related to specific or ascertained 'goods,' and the title would pass according to the intention of the parties. Section 6002a18. As no further act was to be done by the seller and as no conditions were to be fulfilled no intention to post-

pone the passing of title to a subsequent date appears. Hence it would pass immediately or, at the latest, when the hay was mature enough for severance. Section 6002a19."

 The law encourages good husbandry. There is no showing or claim of fraud or that the contract for fifty per cent of the severed hay was unusual or not the going rate. We hold that the term "goods" in the Uniform Sales Act, 51–01–01 (10), North Dakota Century Code [prior to effective date of Uniform Commercial Code], includes alfalfa hay and it is subject to sale and purchase like other personal property under said Act, and title will pass according to the intention of the parties.

 (3) The complaint in each action succinctly states that the plaintiff leased the alfalfa crop on the land from Mrs. Isabel M. Perry, who was in possession of the land through her agent Milton K. Higgins. The appellant claims on appeal that there was an issue of fact as to whether Higgins was the agent of Mrs. Perry upon which he was entitled to a trial and that summary judgment should not have been granted. Each complaint was sworn to by the plaintiff upon personal knowledge. Supporting affidavits are not necessary on motions for summary judgment. N.D.R.Civ.P., 56(a). The complaints are, in effect, affidavits in view of their positive verifications by each plaintiff. Fowler v. Southern Bell Telephone & Telegraph Co., 343 F.2d 150 (5 Cir. 1965). In answer to the complaints the defendant interposed a general denial. He made no attempt to respond by affidavits or otherwise and to set forth specific facts to show there was a genuine issue for trial as is required by Rule 56(e). See Notes of Advisory Committee on Rules, 28 U.S.C.A., Rule 56. The relation of principal and agent is a legal one, depending upon the existence of certain facts, and the statement that it exists may be in the nature of a conclusion, yet the relation is also a condition of which anyone having personal knowledge of it may testify. Wig-

more on Evidence, 3d Ed., Sec. 1960; 3 Am.Jur.2d Agency, Sec. 356, p. 714; 3 C.J.S. Agency § 322, p. 274. Huesinkveld v. St. Paul Fire & Marine Ins. Co., 106 Iowa 229, 76 N.W. 696, 698 (1898); Yorkshire Ins. Co. v. Bunch-Morrow Motor Co., 212 Ala. 588, 103 So. 670; Exchange State Bank of Glendive v. Occident Elevator Co., 95 Mont. 78, 24 P.2d 126, 129, 90 A.L.R. 740; Dillon v. Sumner, 153 Cal.App.2d 639, 315 P.2d 84, 87.

Moreover, it was not until an appeal was made to this court did the appellant contend there was a real factual issue in dispute in regard to the allegations of the complaints. In the trial court the appellant contended that alfalfa hay was fructus naturales and therefore he had the right to seize the stacked alfalfa he found upon the premises when possession of the land was returned to his landlord. The written brief appellant presented to the trial court in opposition to the motion for summary judgment argues only this question of law. At no time did he argue at the trial level the authority of Higgins to rent the alfalfa crops to the plaintiffs or whether the allegations were made on personal knowledge of the plaintiffs as they swear to in their complaints. It appears clear to us that the reason the appellant did not submit any affidavits or other proof in opposition to the facts set forth in the complaints was that he, himself, acknowledged the authority of Higgins to act for Mrs. Perry. At the jury trial on the issue of damages, he was asked on cross-examination whether he had consulted with Mrs. Perry about the ownership of the stacked alfalfa before he ordered his hired man to bale it and haul it away. He replied to this question:

"I would not have talked to Mrs. Perry direct because she was represented by counsel. I don't think I talked to Mr. Higgins either." (Tr. p. 67, lines 16–18.)

In his statement of facts in his brief on appeal to this court the appellant states:

"During the year that the decision was pending in the Supreme Court the plain-

tiff Remmick put up the first cutting of alfalfa and the plaintiff Lang put up the second cutting. *Their tenancy was arranged by Higgins with Perry.* Some hay had been removed but a substantial quantity was in large stacks in the alfalfa field when Mills returned to possession." (Emphasis furnished.)

And when the defendant was advised by his hired man that someone was trucking hay out of the field, defendant testified that he advised the deputy sheriff:

"At that time I advised him to call Mr. Higgins and see if he had anything to do with it or knew anything about it." (Tr. p. 73, lines 6–8.)

We also note that Milton K. Higgins testified that he had acted for Mrs. Perry in making the arrangements with the plaintiffs for the cutting and stacking of the alfalfa. He told how he measured the stacks carefully in the presence of one of the plaintiffs after both cuttings of the alfalfa had been stacked.

■ The rule is elementary that an issue or contention not raised or considered in the lower court cannot be raised for the first time on appeal from the judgment. Kelsch v. Miller, 73 N.D. 405, 15 N.W.2d 433, 155 A.L.R. 1186; Bank of Killdeer v. Fettig, 129 N.W.2d 365 (N.D.1964); Almy v. Kvamme, 63 Wash.2d 326, 387 P.2d 372; Townsend v. LaCrosse Trailer Corporation, 256 Wis. 609, 42 N.W.2d 164. While the reason for the general rule is supportable on a number of considerations, it is usually placed on the ground that the opposite party should have the proper opportunity to avoid, by amendment or by supplying any defects in his proof, the effect of the objection. 4 C.J.S. Appeal and Error § 228, p. 673.

■ As stated above the verified complaints were, in effect, affidavits in support of the motions for summary judgment. Objections to sufficiency of affidavits in support of summary judgment should be brought to the trial court's at-

tention and cannot be raised for the first time on appeal. When motion for summary judgment is based upon affidavits in which the affiants state that the facts therein stated are within the personal knowledge of the affiants, a party opposing such motion who is in doubt as to whether such affidavits in support of the motion are made on personal knowledge, should bring this to the attention of the trial court and except to the affidavits at or prior to hearing on motion, and objection may not be raised for the first time on appeal. West Side Bank v. Marine Natl. Exchange Bank, supra; Hall v. Fowler, 389 S.W.2d 730 (Tex.Civ.App.1965); Townsend La Crosse Trailer Corporation, supra; De Salvo v. Howell Plaza Inc., 38 Wis.2d 167, 156 N.W.2d 473; Christian v. Jemison, 303 F.2d 52 (5 Cir. 1962); River Plate & Brazil Conf. v. Pressed Steel Car Co., 227 F.2d 60 (2 Cir. 1955); Campione v. Henry C. Lytton & Company, 57 Ill.App.2d 147, 206 N.E.2d 780; Starr v. Koppers Company, 398 S.W.2d 827 (Tex.Civ.App. 1965); Wool v. Solar Aircraft Company, 47 Ill.App.2d 84, 197 N.E.2d 477; Atlas v. Eastern Airlines, Incorporated, 311 F.2d 156 (1 Cir. 1962).

■ (4) Appellant contends that the issue of punitive damages should not have been submitted to the jury. The jury awarded $500 punitive damages against the appellant in each lawsuit in addition to actual damages. In ordering summary judgments, the district court stated:

"The plaintiff was the owner of the hay in question in this action at all times after such hay was cut and severed, and the taking thereof by the defendants constituted a conversion for which they are liable in damages *in whatever sum may be proved in this action.*" (Emphasis supplied.)

Appellant argues that the underlined phrase limited the trial to actual damages only. We are satisfied that the court did not eliminate or intend to eliminate punitive damages from the case, although the lan-

guage used was inappropriate. The complaints allege fraud and malice. These allegations had not been stricken from the complaints. The issue of punitive damages was submitted to the jury without objection from appellant. The appellant was permitted by the trial court to introduce considerable testimony pertaining to the circumstances surrounding the conversion of the alfalfa which circumstances had nothing to do with the value of the alfalfa. At one point during the trial, the court stated in response to an objection to a question being asked by appellant on cross-examination:

THE COURT: "I think I'm going to permit the examination because of the claim for punitive damages." (Tr. p. 60, lines 21–22.)

Later in the trial the appellant stated from the witness stand:

"I'll be testifying in my own behalf later in the matter of punitive damages." (Tr. p. 77, lines 2–4.)

Exemplary damages may be awarded for conversion when the wrongdoer has been oppressive or malicious. Lamoreaux v. Randall, 53 N.D. 697, 208 N.W. 104. The trial court properly permitted the jury to consider whether punitive damages should be awarded the plaintiff.

(5) Appellant contends that the court erred in the admission of hearsay testimony during the direct examination of plaintiff Lang:

"Q. At the time you talked to Mr. Higgins, was anything said about the first cutting?

"A. Yah. He had told me that Mr. Remmick put up the first cutting and that he wasn't interested in the second cutting because I guess he had taken on a job and couldn't put up the second cutting." (Tr. p. 7, lines 15–20.)

Appellant objected to the answer as hearsay and asked that it be stricken. The trial court denied the request. Appellant argues that this was prejudicial because the value of the alfalfa was an issue in the case and that the real reason why Remmick failed to contract for the second cutting of the alfalfa was the poor quality of the first cutting. The answer is hearsay, but the latter part of the answer could well have been the conclusion of the witness and not what Higgins had told him. But regardless of whether the entire answer was hearsay or not, we fail to see how appellant could have been prejudiced by the admission of this testimony. Both Higgins and Remmick were cross-examined by appellant at a later point during the trial, and Remmick was specifically questioned by appellant regarding the quality of the first cutting of alfalfa. The ruling of the trial judge was harmless error which did not affect the substantial rights of the appellant. Rule 61, N.D.R.Civ.P.

(6) On cross-examination of the hired man Pinks, who baled the alfalfa, the transcript shows:

"Q. Under the circumstances that hay was worth about forty dollars a ton, wasn't it?

"A. That first cutting, definitely not. If it would have been my hay, I would have left it there. The second cutting, that third stack, was good hay.

"Q. Did you ever make the statement that you wouldn't have taken forty dollars a ton for that hay?

"A. Yes, sir, what I was doing, baling there at 15 to 20 below zero." (Tr. p. 82, lines 15–23.)

Upon direct examination of Pinks by appellant following the above cross-examination, Pinks was asked:

"Q. Now, you stated that if that first cutting had been yours, you

wouldn't even have bothered with it?

"A. That is what I stated, yes.

"Q. Were you present when any hay buyers came down?

"A. There was one fellow came in there one day, I don't know his name.

"Q. Was it Donald Ranghoff?

"A. I believe that is what his name was, Ranghoff, a short, heavy-set person.

"Q. Did you examine the hay with him?

"A. Yes, he poked and prodded into the stacks.

"Q. After examining it with him, did you change your opinion?

"MR. VOGEL: Just a moment, I'll object to this as getting—

"THE COURT: Sustained." (Tr. p. 85, lines 18 to page 86, line 8.)

Appellant contends that prejudicial error was committed by the trial court in refusing to permit the witness to answer this last question. Counsel states in his brief in argument:

"Pinks had made a statement at some previous time of what he believed the hay to be worth. This statement of value was brought out by the plaintiffs in their examination of Pinks. When the Appellant had an opportunity to examine Pinks *the witness testified that he had subsequently carefully examined the hay.* The question of whether, after examining the hay, he had changed his previous opinion of its value was objected to and sustained. Clearly this limitation on examination of Pinks by Mills was prejudicial. The jury had before it only Pinks value of the hay before he examined it carefully and the Appellant is stuck with this testimony and unable to explain or dispute it." (Emphasis supplied.) Appellant's Brief, p. 58–59.

We have examined the transcript of the testimony and it does not show that the witness "carefully" examined the alfalfa *subsequent* to the time when he had stated it was worth forty dollars a ton. It was not clear what opinion counsel was referring to in the question. Whether the witness had changed his opinion evidently did not appear relevant to the trial court. What the witness saw or his description of the alfalfa would be relevant. Counsel did not ask the witness what he saw or what he had found when he had examined the alfalfa. There was nothing to show the importance of the excluded testimony nor did counsel clarify it for the court. If the witness had been permitted to answer the question, it would have been of little value without an explanation of what he had observed. We have consistently followed the rule that a party must offer to prove facts sought to be elicited from a witness before he can assign error upon an objection sustained to a question, the competency of which is not apparent on its face. Froh v. Hein, 76 N.D. 701, 39 N.W.2d 11, and cases cited therein; 5 Am.Jur.2d Appeal and Error, Sec. 802, p. 244. We hold that it was not prejudicial error for the trial court to exclude the answer to the question set forth above.

(7) Appellant claims error because of the refusal of the trial court to grant defendants' requested instructions No. 1 and No. 2:

"No. 1: Every person who, while lawfully in possession of personal property, renders any service to the owner by labor or skill employed for the protection, improvement or safekeeping has a special lien thereon for the compensation due to him from the owner for such service."

"No. 2: In mitigation of damages the jury may consider the amount due on any lien to which the plaintiffs rights were subject and which lien was held by the defendants."

The appellant did not argue the specifications of error pertaining to the above instructions in his brief filed in this court. Specifications of error unsupported by written argument in brief filed in Supreme Court are deemed abandoned. Rule 8(B), Rules of Practice, North Dakota Supreme Court, 76 N.D., p. xix; Regent Coop. Equity Exch. v. Johnston's Fuel Liners, 122 N.W.2d 151 (N.D.1963); Froemke v. Hauff, 147 N.W.2d 390 (N.D.1966).

(8) The following instruction was given to the jury:

"The term malice imports a wish to vex, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law. Malice may consist of a direct intention to injure another, or in reckless disregard of his rights and the consequences that may result to him. Malice is not limited to a spiteful, malignant, or revengeful disposition and intent but includes wrongful and improper motives or intent to do a wrongful and improper act. *When a wrongful or unlawful act is wilfully or deliberately done, the law presumes that the act was done with unlawful intent and that the wrong done was actuated by malicious motives.*" [Emphasis supplied.] (Tr. p. 136, lines 4–15.)

■ This instruction was taken from the North Dakota Jury Instructions manual. The appellant contends that the underlined portion of the instruction was prejudicial. He argues in his brief that if a wrongful or unlawful act is wilfully or deliberately done, the above instruction tells the jury that it can presume the act was actuated with malicious motives, even though the defendant may have believed that the property taken belonged to him. We find no error in this instruction. The court was defining express and implied malice in this instruction. Sec. 32–03–07, N.D.C.C. states:

"When jury may give exemplary damages.—In any action for the breach of an obligation not arising from contract, when the defendant has been guilty of oppression, fraud, or malice, *actual or presumed,* the jury, in addition to the actual damages, may give damages for the sake of example and by way of punishing the defendant." (Emphasis supplied.)

■ Malice which is presumed is also known as legal malice or malice in law. It was discussed by this court in Shoemaker v. Sonju, 15 N.D. 518, 108 N.W. 42. In that case, the defendant told the jury that he did not have any malice or hate against the plaintiff and that they had never had a quarrel. As a result of this testimony and similar testimony, the trial court took the question of malice from the jury and instructed the jury that exemplary damages should not be considered or awarded. The Supreme Court held that the trial court was in error, granted a new trial, and stated on page 44 of the opinion:

"The above testimony only goes to the question of actual malice. * * * Malice which will authorize a recovery of exemplary damages may be actual or presumed. Section 4977, Rev.Codes 1899 [now 32–03–07, N.D.C.C.]. Malice which is presumed or malice in law, as distinguished from malice in fact, 'is not personal hate or ill will of one person toward another; *it refers to that state of mind which is reckless of law and of the legal rights of the citizen in a person's conduct toward that citizen.*' 1 Suth. on Damages (2d Ed.) § 394; Willis v. Miller (C.C.) 29 F. 238, Fotheringham v. Adams Ex. Co. (C.C.) 36 F. 252, 1 L.R.A. 474; White v. Spangler, 68 Iowa 222, 26 N.W. 85; Voltz v. Blackmar, 64 N.Y. 440." (Emphasis supplied.)

22 Am.Jur.2d Damages, Section 250, has this to say on the subject:

"*Nature of malice authorizing recovery.*

* * * While it has been said that the term imports a wish to vex, annoy, or injure another, it does not necessarily mean mere spite, ill will or hatred. The malice

need not have been directed against the plaintiff, nor need the act have been done with the purpose to do a wrong to him. * * *

* * * By express provision of the statute in some states the malice may be either actual or presumed.

Where malice in law is sufficient, it is not necessary to prove more than that the defendant acted with the intention, design, or set purpose of injuring the plaintiff. Malice in law will also be implied from unjustifiable conduct which caused the injury complained of or from a wrongful act intentionally done without just cause or excuse."

Section 31–11–03, North Dakota Century Code, states as a disputable presumption that "an unlawful act was done with an unlawful intent" and that "a person intends the ordinary consequences of his voluntary act."

■ In the case before us, the appellant had the right to present evidence to overcome the presumption that he acted with malice. Much latitude was allowed appellant in permitting him to explain to the jury his reasons for taking the hay, why he thought it belonged to Mrs. Perry, why he thought he had the right to move it before the spring break-up, and so forth. On cross-examination of Higgins, appellant was permitted to delve into the fact that the Supreme Court had reversed the district court to restore possession in the land to Erling, the necessity of removing hay before the ground became soft, the custom of leaving the owner's share of hay on the premises and other matters.

Neidhardt v. Siverts (N.D.1960), 103 N.W.2d 97 was also an action for conversion of hay. The jury awarded actual and exemplary damages. The trial judge granted a new trial and in his memorandum opinion he indicated that he thought there was no evidence of malice, actual or implied, and that no exemplary damages should have been awarded by the jury.

This court reversed the order granting the new trial, holding that whether the defendant was guilty of malice, actual or presumed, was primarily a question for the jury. In the opinion at page 102 we stated:

"*The evidence is such that the jury could have found that the defendant committed the three deliberate acts in total disregard of the plaintiff's rights.* It warrants a finding that he hauled some of the hay to his own farmyard and appropriated it, some he scattered about the field, and another portion he pushed over a bank and into the brush where it could not be recovered by the plaintiff after he found it. Some of the acts the defendant tried to explain, others he denied, but his credibility was for the jury." (Emphasis supplied.)

■ In the present case, there is ample evidence for the jury to have found that the appellant committed the wrongful conversion of the alfalfa in wanton disregard of the rights of the plaintiffs. As was previously set forth herein on cross-examination when he was asked by counsel for plaintiffs whether he had consulted with Mrs. Perry about who owned the hay, he answered:

"A. I would not have talked to Mrs. Perry direct because she was represented by counsel. I don't think I talked to Mr. Higgins either." (Tr. p. 67, lines 16–18.)

When his hired man Pinks was baling the second of several stacks of alfalfa, the plaintiff, Remmick, drove to the land and informed Pinks that he owned part of the alfalfa, but Pinks continued to bale the hay, stating that he was only the hired man of Mills. Meantime, plaintiff Lang learned that someone was baling his alfalfa which he had stacked and left on the land. So, he hauled out one load of the baled alfalfa. Then Mills notified the sheriff and Lang was told by the sheriff to bring the hay back. But Lang refused to do so, stating it was his hay. The sheriff reported this conversation to Mills, but Mills continued

to bale the remainder of the hay and had it hauled to his farm. (Tr. p. 71, lines 1–25; p. 72, lines 1–11.) When Mills ordered his hired man to bale the hay and have it hauled away, he had made no inquiry as to whom the hay belonged. (Tr. p. 69, lines 9–11.)

 If appellant had desired a specific instruction, he should have requested it. Fisher v. Suko, 111 N.W.2d 360 (N.D.1961); Bartholomay v. St. Thomas Lumber Co., 148 N.W.2d 278, 288 (N.D. 1966). We have repeatedly held that instructions must be considered and construed as a whole. Jasper v. Freitag, 145 N.W.2d 879 (N.D.1966).

 (9) The trial court instructed the jury:

"That Mrs. Isabel M. Perry is not a party to this action and that your sole duty, on the question of actual damages, is to find the amount by which each plaintiff was damaged, if any, by the taking of the hay. *Any debt owed by plaintiffs to Mrs. Perry is not an issue in this case.*" (Tr. p. 132, lines 13–16.) (Emphasis supplied.)

Appellant claims that the court erred in giving the underlined portion of the above instruction. The transcript of the testimony does not disclose any "debt" owed by plaintiffs to Mrs. Perry. Appellant apparently contends that the alfalfa left on the land was a "debt" or could have been a "debt" due and owing Mrs. Perry by the plaintiffs. But if the plaintiffs had left the landlord's share of the alfalfa on the landlord's property, there was no further delivery to be made to her. It could

hardly be termed a debt as the term is ordinarily understood.

 We do not see how the jury could have been misled by the above instruction. As previously stated in this opinion counsel was permitted much latitude in explaining to the jury his reasons for taking the hay. If counsel believed that this isolated sentence in the above instruction affected his defense, he should have submitted an instruction to the trial court. We follow the well-established rule that, where an instruction is correct as far as it goes, error cannot be assigned on the ground that it is not sufficiently full or explicit, unless a request is made for a more specific and comprehensive instruction. Fisher v. Suko, supra.

We conclude that the challenges to the rulings of the court during the trial and to the instructions cannot be sustained as errors of law.

The summary judgments, on the issue of liability alone, and final judgments are affirmed. The orders of the trial court dismissing paragraph 12 of the counterclaims are reversed and set aside as to the claims stated in paragraph 12. As to the dismissal of the other claims contained in said counterclaims, the orders of dismissal are affirmed.

TEIGEN, C. J., and PAULSON, KNUDSON, and ERICKSTAD, JJ., concur.

STRUTZ, J., deeming himself disqualified, did not participate; Honorable ROY A. ILVEDSON, Judge of the Fifth Judicial District sitting in his stead.