SUPERIOR OIL CO., a corporation, Jake L. Hamon, Don O. Chapell and Fleet Drilling Co., a corporation, Plaintiffs in Error,

v.

Ralph N. GRIFFIN, Defendant in Error.

No. 38603.

Supreme Court of Oklahoma.

Dec. 13, 1960.

Hart & Burger, Pauls Valley, Looney, Watts, Looney & Nichols, Anna B. Otter, Oklahoma City, for plaintiff in error.

George Bingaman, Thomas G. Smith, E. S. Hester, Purcell, for defendant in error.

BERRY, Justice.

In his petition filed below, defendant in error, Ralph N. Griffin, hereafter referred to as "plaintiff", alleged in substance in his first cause of action that on March 1, 1955 he executed and delivered to The Superior Oil Company an oil and gas lease covering 120 acres of land lying in Garvin County, Oklahoma; that partial interests in said lease were subsequently assigned to Jake L. Hamon and Don O. Chapell; that on or about August 1, 1957, owners of the lease, through Fleet Drilling Company, entered upon the leased premises for the purpose of drilling a test well for oil and gas; that under the provisions of the lease the defendants became liable and bound to pay damages caused to growing crops by their operations on the leased premises; that as a result of drilling operations a growing crop of lespedeza and King's Ranch blue stem grass of the value of $200 and a growing crop of eight pecan trees of a diameter of six or more inches of the value of $800 were destroyed.

For his second cause of action, plaintiff alleged in substance that he entered into a contract with defendants, by the terms of which defendants were granted permission to construct a road from a drilling location to the north edge of the leased premises; that defendants, in constructing said road, agreed that a metal gate would be installed in the fence line at the north edge of the leased premises; that defendants failed to install the gate, and in lieu thereof constructed a cattle guard; that the cattle guard was negligently constructed; that on August 21, 1957 horses upon land to the north of the cattle guard passed over the cattle guard and into a pasture in which plaintiff kept his registered Angus bull; that the horses chased the bull through a barbed wire fence; that in going through the barbed wire, the bull's genital organs were injured to the extent that he was rendered unfit for breeding purposes; that he was sold for $150 as beef; that the value of the bull prior to being injured was $1,000.

For his third cause of action, plaintiff alleged in substance that defendants constructed a slush pit at one of the drilling locations; that as a result of the pit being negligently constructed, a break occurred therein thus permitting poisonous chemicals, lead and caustic substances contained in the pit, to escape and flow into a creek running through one of plaintiff's pastures; that plaintiff was warned to keep his cattle away from the creek; that he herded his cattle away from the creek for thirty days; that his expense and loss from contamination of the creek was $10 per day, or a total of $300.

For his fourth cause of action, plaintiff alleged in substance that on October 10, 1957, defendants negligently and carelessly permitted oil to spray from a stuck valve on a completed well on the leased premises; that said oil destroyed a growing crop of native grass of the value of $50.

During the trial of the case, plaintiff dismissed his several causes of action as to all defendants except plaintiff in error, Jake L. Hamon, who is hereafter referred to as "defendant".

In his answer to plaintiff's petition, defendant denied all material allegations of the petition that were not therein admitted. In pleading further, defendant admitted

that he held an oil and gas lease covering plaintiff's property; that he denied that any growing crops on plaintiff's land were damaged; that pecan trees are not growing crops; that if damages resulted from horses gaining access to the pasture in which plaintiff kept his bull, the damages were attributable to plaintiff's negligence and want of care in not promptly removing the horses upon learning of their presence in the pasture. In an amendment to the answer, the last referred-to allegation was enlarged upon.

In his reply to defendant's answer, plaintiff denied generally the allegations of defendant's answer and amendment thereto.

The case was tried to a jury. The verdict of the jury was that plaintiff should recover damages as follows: On his first cause of action, $750; on his second cause of action, $350; on his third cause of action, $200; and on his fourth cause of action, $50. After judgment was entered on the verdict, defendant filed a motion for new trial. Upon said motion being denied, this appeal was perfected.

■■■ The issue presented by plaintiff's first cause of action is whether King's Ranch blue stem grass, lespedeza and pecan trees are "growing crops" within the purview of the provision of the lease to the effect that "Lessee shall pay for damages by its operations to growing crops on said land". The trial court concluded that under the facts of this case, the grass, lespedeza and pecan trees were growing crops within the meaning of the quoted provisions of the lease. The defendant earnestly contends that in so concluding, the trial court erred.

In making the first location approximately 3½ acres of land were used, which acreage was laid bare by a bulldozer. Plaintiff testified that there was a good stand of King's Ranch blue stem grass (hereafter referred to as grass) and lespedeza on the 3½ acres; that two-thirds of the stand was grass and the remaining one-third was lespedeza; that the stand of grass was established during the feeding

months of 1956–1957 by feeding approximately 40 bales of grass to cattle on said acreage; that the grass had made seed prior to being baled and that the action of the cattle in eating the grass scattered and in effect planted the seed; that lespedeza seed had been planted more than five years before the location was made; that the stand of lespedeza resulted from seed produced by lespedeza plants in 1956; that the grass and lespedeza were used as pasturage. As indicated, lespedeza is an annual and blue stem grass is a perennial plant.

Plaintiff testified that eight pecan trees were bulldozed out; that the trees were from 15 to 20 years old; that they were from 6 to 10 inches in diameter; that the trees had borne nuts of a good qaulity; that the trees had been cultivated by pruning same, cleaning up leaves that had fallen around and near them and by cutting down trees and sprouts that grew in the grove; that if a pecan tree did not bear a good quality nut it was destroyed; that the trees in the grove were spaced "about 30 or 40 feet apart"; that there were other native pecan trees growing on the farm, some of which were larger than those that were destroyed; that plaintiff harvested the pecans.

We held in Canadian Mining Company v. Cleveland et al., Okl., 312 P.2d 913 that a bermuda-grass and lespedeza meadow was a growing crop within the provisions of a coal-mining lease providing for payment of damages to growing crops which resulted from strip coal-mining operations, and in Cities Service Gas Company v. Christian et al., Okl., 340 P.2d 929, we held that grasses seeded for a pasturage crop constituted a growing crop within the provisions of a pipe-line easement providing for payment of damages to growing crops which resulted from laying a pipe line.

Defendant contends that neither of the cited cases are in point; that the fact that the bermuda and lespedeza crop was established in the first cited case in order to harvest hay therefrom serves to distinguish said case from the instant case, and the fact that our holding in the second cited case

was limited to the facts of that case serves to distinguish that case from this case. We are unable to agree. We are of the opinion that where clovers, legumes or grasses are seeded for either pasturage, meadow, or seed crop purposes, the resulting crop should be treated as a growing crop within the purview of the provisions of an oil and gas lease to the effect that damages will be paid for damage to or destruction of growing crops.

Assuming that the grass comes up to a good stand (and plaintiff so testified) and that the lespedeza continues to reseed as it has in the past, the crop could be utilized for either of the purposes above referred to. Therefore, to make use of the determining factor in solving the question posed, would mean that the status of the crop could change from year to year or from time to time during a year. As we understand defendant's position, a crop would not be a growing crop during the months that it was pastured but would become a growing crop if stock were removed therefrom in order to harvest a hay or seed crop. Thus it would seem that use does not of itself form a satisfactory criterion for determining the issue under consideration.

Defendant contends that the pecan trees were not a growing crop and to the contrary, were produced by the power of nature alone; that the trees were a part of the soil and must be classified as *fructus naturales* and not *fructus industriales*.

As pointed out, plaintiff thinned the trees in the pecan grove in which the eight trees were growing. He also pruned the trees, cleaned up dead leaves that fell from the trees and cut brush that grew in the grove. In view of the effort and labor so expended, the pecan crop cannot be said to have resulted solely from the power of nature. The fact that pecan trees, and for that matter perennial grasses, are generally considered to be a part of the realty, has little if any bearing on the issue under consideration. As a general rule, a growing crop such as wheat, oats, corn, etc., is considered a part of the realty, but irrespective of

said fact, such crops are generally classified as "growing crops". Under the facts of this case, we are of the opinion that the eight pecan trees were properly considered by the trial court to be growing crops. See the Cities Service Gas Company case, supra. Also see 15 Am.Jur. "Crops", Sec. 4, p. 197, where this is said:

"Attention in recent times, however, has been given to the modern methods of fruit culture and the assistance afforded nature in producing fruit and other products of bushes and trees, and the better rule now regards as 'fructus industriales' a growing crop which owes its existence in its final perfection and abundance to the care and cultivation of man, even though it may proceed from perennial roots. * * *"

There was competent evidence that the value of the farm immediately prior to the crops being destroyed was $8,000 and that the value thereof immediately following said destruction was $7,000.

The trial court, in our opinion, did not err in entering judgment on the verdict for plaintiff in his first cause of action for $750.

The evidence bearing upon plaintiff's second cause of action for damages to a registered bull is in substance this: Plaintiff and defendant entered into an oral agreement by the terms of which defendant was given permission to construct a road from a drilling location on plaintiff's farm to the north edge of said farm. It was agreed that a metal gate would be installed at the point where the roadway intersected plaintiff's fence which extended east and west along his north property line. This portion of the agreement was subsequently modified to the extent that it was agreed that a cattle guard could be installed at said point until the well to which the road led was either drilled or completed. Plaintiff testified that the gate was to be installed immediately upon drilling operations being concluded, and defendant's evidence was that the gate was not to be installed until the well was completed. This

question of fact was resolved in plaintiff's favor by the jury.

After drilling operations had ceased, but before the well had been completed, horses kept on land to the north of plaintiff's farm passed over the cattle guard and made their way into a pasture in which plaintiff kept a registered Angus bull. As the result of the horses chasing the bull through a barbed wire fence, his genital organs were injured to the extent that he was no longer fit for breeding purposes and was sold as beef.

■ Defendant contends that the evidence shows that plaintiff was guilty of negligence which contributed to the damages that he sustained from the bull being injured and that the trial court erred in not presenting said issue to the jury.

In support of said contention, defendant points to the fact that the horses had gained entrance to plaintiff's pasture prior to the date that the bull was injured, and that the horses on said prior occasion or occasions had chased plaintiff's cattle. Defendant therefore contends that plaintiff had "knowledge of propensities of the horses to chase his cattle" prior to the date the bull was injured. Defendant asserts that the evidence shows that on the date the bull was injured, plaintiff had known that the horses had gained entrance to the pasture in which the bull was kept several hours before the bull was injured. We do not so understand the evidence. As we read the record, it was on a prior occasion that plaintiff· knew that the horses were in the pasture with his stock and that it was on said occasion that he failed to promptly drive the horses from the pasture. The evidence shows that on the date the bull was injured, plaintiff noticed that the horses were in the pasture at a time when he was baling hay in a nearby meadow; that as soon as he reached a point in his baling operations which brought him near the pasture, he drove the horses over the cattle guard where they had gained entrance and onto land north of his farm. The record fails to show that plaintiff was guilty of negligence as charged in defendant's answer, and for said reason the trial court did not err in failing to instruct on the issue of contributory negligence.

■ The defendant contends that the trial court erred in instructing the jury that plaintiff's second cause of action was based upon contract when it was in fact based upon tort arising from defendant's alleged negligence in constructing a cattle guard that horses could walk or jump over. We are unable to agree. In his petition plaintiff alleged that defendant agreed to install a metal gate; that "In disregard of their agreement to install said gate the said defendants did construct said road and installed a cattle guard in the fence which crossed the road"; that "defendants negligently failed to provide an adequate cattle guard and shortly after the installation of the same and on August 21, 1957, horses from the adjoining land entered the property of the plaintiff across said cattle guard", and that the horses caused the bull to be injured, etc. As we read the petition, plaintiff alleged in substance that (1) defendant failed to comply with the contract to build a gate and that (2) the cattle guard as installed did not constitute substantial compliance with the contract for the reason same was so negligently constructed that livestock could pass over same.

■ The only evidence as to the value of the bull at the time he was injured was plaintiff's opinion that the bull was then of the value of $1,000. Plaintiff testified that he had farmed and raised livestock for more than 20 years; that he took agricultural courses in common school; that upon being discharged from the Armed Services of the country he "took 48 months of vocation agriculture"; that he had judged bulls while a member of judging teams; that he was familiar with certain breeding lines of registered Angus; that the bull's breeding was good and that he was a show-type animal. We are of the opinion that plaintiff's experience and training qualified him to express an opinion of the bull's value as of the date the bull was injured.

The gross amount received from the sale of the bull as beef was $179.90.

In our opinion, the trial court did not err in rendering judgment on the verdict for plaintiff on his second cause of action in the amount of $350.

■■ We next consider the issues raised by plaintiff's third cause of action relating to alleged damages resulting from fluid escaping through a break in the slush pit.

Plaintiff testified that mud and oil escaped from a slush pit and flowed into a creek running through one of his pastures; that cattle would drink the fluid that so escaped "if you don't beat them away with a stick". Plaintiff offered no competent evidence that the fluid was poisonous.

Defendant introduced evidence to the effect that the fluid escaped from a reserve pit used solely for mud; that there was no oil in the fluid; that the mud had "expended itself" and was free of poisonous substances at the time a break occurred in the pit; that there was no oil in the fluid which flowed in the pit and no harm would come to cattle if they drank the fluid. Defendant offered no evidence to the effect that injury to cattle will not result from their drinking water contaminated by crude oil.

The evidence shows that plaintiff was of the conviction that the fluid which flowed from the slush pit came from the principal slush pit; that the contents of such slush pits are poisonous and that injury or death would result to his cattle if they drank the fluid. His conviction as to the contents of the usual slush pit being poisonous to livestock is probably shared by many Oklahoma stockmen but this fact does not tend to establish that the fluid which flowed into the creek was in fact poisonous.

Defendant contends that in view of the fact that the contents of the slush pit was not poisonous, that negligence on its part in permitting a break in the pit cannot be said to be the proximate cause of the damages claimed by plaintiff under this third cause of action. We are unable to agree.

As we understand defendant's contention on the issue under consideration, defendant asserts that since the cattle were not in fact in danger because the fluid in the creek was not poisonous, plaintiff cannot recover damages incurred in protecting his cattle. In speaking of the so-called rescue doctrine as applied to cases where an injury results to a person who attempts to rescue another person, this is said at p. 738, § 124, 65 C.J.S. Negligence:

"* * * It is sufficient, however, that someone is in danger, although, at the moment the effort to rescue is made, the danger is not imminent to a definite person, and, even though no danger is actually imminent, the rule is applicable to one who acts on appearances, if his conduct is that of an ordinarily prudent man under the circumstances."

In Curtis v. Shell Pipe Line Corp., Okl., 265 P.2d 488, the rescue doctrine was applied to Curtis who was injured in attempting to extricate his cow from a ditch into which she had fallen. The ditch had been dug by Shell Pipe Line Corp. We there stated in substance that an injury sustained by the owner of property in making a prudent effort to minimize damages and to save his property from loss may be the direct and proximate result of the act of negligence which placed the property in peril.

We are of the opinion that the above quoted statement from 65 C.J.S. and our holding in the last above cited case are applicable where the negligent act of a person creates a condition that to an ordinarily prudent person has the appearance of being imminently dangerous to his property. We are, therefore, of the opinion that whether defendant's negligence in permitting its slush pit to break was the proximate cause of the damages sustained by plaintiff in attempting to protect his cattle from a condition which had the appearance of being imminently dangerous and one which is by many stockmen considered to be dangerous, presented a question of fact for the jury.

994

On the matter of damages, the plaintiff testified that fluid remained in the creek approximately 25 days at the end of which period the fluid was flushed down the creek by runoff water from a heavy rain; that during the daytime of said period he herded his cattle away from the creek; that during the night time of said period he lotted his cattle and fed them hay; that he was compelled to pump water for the cattle over this period.

The evidence fails to show the quantity of hay fed the cattle or the value of the hay, and the evidence also fails to show the value of plaintiff's services in pumping water for the cattle. As to damages incurred, the evidence only shows that plaintiff spent approximately 12½ days in herding his cattle and that the value of his service was $10 per day or $125. The judgment rendered on plaintiff's third cause of action is excessive to the extent of $75. In the event plaintiff agrees to remit said excess, judgment should be entered for plaintiff on his third cause of action for $125, otherwise a new trial on said cause of action should be granted.

■ On the remaining and fourth cause of action, there was competent evidence to the effect that as a result of a valve sticking on one of defendant's producing wells, approximately 1½ acres of plaintiff's native pasture grass and lespedeza were sprayed with oil and that one-third of the grass was destroyed.

The only evidence relative to the value of the grasses destroyed was plaintiff's testimony to the effect that as a farmer familiar with grasses, he was of the opinion that the value of said grasses was $50.

Defendant contends in substance that said testimony is wholly insufficient to sustain the jury's verdict and judgment therein in plaintiff's favor for $50 as damages to his grasses.

The defendant failed to object to the questions which elicited the foregoing opinion or to move to strike the testimony given in response to the questions. It follows that the jury was privileged to give due weight and consideration to plaintiff's opinion notwithstanding he may not have been shown to be qualified to give the opinion. In the second paragraph of the syllabus to Dane v. Bennett, 51 Okl. 684, 152 P. 347, this was said:

"Incompetent testimony, if relevant to the issue, is sufficient to sustain a verdict, if admitted without objection."

Also see Oklahoma Natural Gas Co. v. Harlan, 206 Okl. 413, 243 P.2d 730, and 53 Am.Jur. "Trial", Sec. 135, p. 119.

■ Defendant also contends that the trial court failed to properly instruct on the measure of damages applicable to the cause of action under consideration. If defendant deemed the instruction inadequate, it was his duty to submit a requested instruction that would properly submit to the jury the correct measure of damages and since defendant failed to do so, he cannot urge that the trial court committed fundamental error in giving the complained-of instruction. See Carver v. Knutson Elevators, Inc. et al., Okl., 285 P.2d 391.

The defendant also contends that the verdict is so grossly excessive as to indicate the jury was influenced by passion, bias and prejudice against defendant. After having carefully examined the evidence, we have concluded that this contention is not well taken.

Judgment entered by the trial court is affirmed except as to the third cause of action with respect to which it is reversed and the cause remanded with directions to grant a new trial thereon, unless, within 30 days from the time the mandate reaches the trial court, plaintiff file his remittitur in the sum of $75, in which event the judgment as modified in this opinion is affirmed.

WILLIAMS, V. C. J., and WELCH, JOHNSON, BLACKBIRD and IRWIN, JJ., concur.

DAVISON, C. J., and HALLEY, J., concur in part and dissent in part.

JACKSON, J., concurs in result.