2012 OK 5

Carolyn Joan COVEL, Individually, and as Personal Representative of the Estate of H.K. Covel, Deceased, Tonni Covel, Toby Keith Covel, and Tracy Kaye Covel, Appellees,

v.

Elias A. and Pedro RODRIGUEZ, d/b/a Rodriguez Transportes and Republic Western Insurance Company, an Arizona Corporation, Appellants.

No. 105,942.

Supreme Court of Oklahoma.

Jan. 31, 2012.

Russell L. Mulinix, Armando J. Rosell and Joseph K. Goerke, Mulinix Ogden Hall Andrews & Ludlam, P.L.L.C., Oklahoma City, OK, for Appellees.

Clyde A. Muchmore, Mark S. Grossman, Jan E. Singelmann, Crowe & Dunlevy, Oklahoma City, OK for Appellants.*

EDMONDSON, J.

¶ 1 This is a wrongful death action in which plaintiffs asserted that defective brakes on the bus owned by Elias A. and Pedro Rodriguez (defendants) caused the death of their decedent, H.K. Covel. Covel was traveling northbound on the inside lane of I–35 when he lost control of his pickup truck and crossed the median and entered the southbound lanes of traffic. Defendants' bus was traveling in the outside southbound lane, and Covel's pickup and the bus collided almost head on. H.K. Covel died on the spot. Plaintiffs asserted that another driver, Sparlin, bumped H.K. Covel in the northbound lane of traffic and caused him to lose control of his vehicle. Defendants responded that their bus was not the cause of the accident

---

* Only those attorneys are shown who have filed an entry of appearance in the appeal. Although defendants' trial counsel appeared on the petition in error and briefs along with appellate counsel, they did not enter an appearance in the appeal.

and that their driver was confronted with a sudden and unavoidable accident. They maintained that even if their brakes were defective, such was merely a condition and not a cause of the accident. After a five-day jury trial, the plaintiffs were awarded $2.8 million dollars and $5,000.00 in punitive damages. The trial court denied defendants' motions for judgment notwithstanding the verdict (JNOV), remittitur or new trial. On appeal, the Court of Civil Appeals, with one judge dissenting, deemed the evidence of plaintiffs' expert, Dr. Mark Strauss, on causation to be legally insufficient on *Daubert* grounds and reversed with directions to enter judgment for the defendants.

¶ 2 Although acknowledging that the defendants had not objected to plaintiffs' expert's testimony or conclusions, and, finding that admission of the evidence was not fundamental error, the Court of Civil Appeals went on to hold that plaintiffs' expert's opinions were not based on scientific method or foundation and that his opinion on causation was ipse dixit.[1] On petition for certiorari, plaintiffs argued that the Court of Civil Appeals applied an erroneous standard of review and substituted its judgment for that of the jury. Plaintiffs argued that defendants' failure to object to the expert's testimony and conclusions waived any contentions that Dr. Strauss' testimony was not supported by proper methodology. Therefore, it was improper for the Court of Civil Appeals to disregard the testimony of their expert. We granted the plaintiffs' petition for certiorari.

¶ 3 The defendants argue that they are objecting to the sufficiency of the expert's evidence, which presents a question of law for the court. They state that, because engineering testimony rests upon scientific foundations, the sufficiency and competency of the expert's testimony must be scrutinized under *Daubert* and *Kumho*, which focus on whether there is a valid scientific basis for the expert's opinion.[2] They argue that the expert's opinions were not competent evidence absent an adequate scientific foundation under *Daubert* standards and were legally insufficient to prove negligence. They assert that where there is no evidence on a material issue such as causation, it becomes a question of law for the trial court rather than the jury.

¶ 4 The Court of Civil Appeals relied upon *Christian v. Gray*, 2003 OK 10, 65 P.3d 591. Christian did not involve expert testimony that was given during the course of a trial. There, the district court had granted defendants' motion *in limine* challenging the admissibility of testimony of plaintiff's expert witness and moving to exclude the expert's testimony on the cause of injury. We assumed original jurisdiction and decided, as a matter of first impression, that the procedures set forth in *Daubert* and *Kumho Tire* were appropriate for determining the admissibility of expert testimony in civil proceedings in this state. We said that *Daubert* requires a trial court to make a determination of the reliability of an expert's evidence *when it is sufficiently challenged.* 65 P.3d at 599, ¶ 11.

¶ 5 Defendants first raised the *Daubert* arguments in their motion for directed verdict after all the evidence was in. Defendants argued that there was no competent evidence of negligence and that it was pure speculation on the part of Dr. Strauss whether it would have made any difference that the bus' brakes were malfunctioning. Although defendants did not object *in limine* or contemporaneously to Dr. Strauss' opinions or conclusions regarding causation on *Daubert* grounds, they attempted, after the testimony was admitted, to use *Daubert* grounds to undermine the testimony.[3]

1. Ipse dixit is a bare assertion resting on the authority of an individual. *Black's Law Dictionary*, 961 (4th ed. 1951), *Christian v. Gray*, 2003 OK 10, 65 P.3d 591, 607, fn. 19.

2. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and *Kumho Tire Co., Ltd. v. Patrick Carmichael et al.*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

3. In their brief in chief, defendants assert that they raised certain issues in pretrial motions *in limine*. The defendants' arguments in their first motion *in limine* were directed to: repair records for the bus; commercial driver's license and commercial vehicle issues; the proposition that Dr. Strauss' opinions regarding the testimony of eyewitness had no reliable basis and should be excluded; and the proposition that Dr. Strauss' skid test video should be excluded. In Okla-

¶ 6 Federal courts have held that a defendant's failure to object to expert testimony admitted at trial forfeits its opportunity to subject the expert testimony to a *Daubert* challenge at the close of all the evidence. *Macsenti v. Becker*, 237 F.3d 1223, 1230–31 (10th Cir.2001), *cert. denied*, *Becker v. Macsenti*, 533 U.S. 950, 121 S.Ct. 2593, 150 L.Ed.2d 752 (2001), The Tenth Circuit, quoting from *Christopher v. Cutter Laboratories*, 53 F.3d 1184, 1191 (11th Cir.1995), stated that if the defendant believed the testimony was statistically invalid, it should have objected to the testimony, giving the witness the chance to explain his answers or to offer proof in support. Objecting would also have provided the district court with the opportunity not only to make a ruling on the accuracy and admissibility of the challenged testimony, but also to clarify that testimony. Although the trial judge is assigned the task of insuring that an expert's testimony rests on a reliable foundation and is relevant, *Daubert* does not mandate an inquiry questioning and challenging the scientific proffer absent a timely request by an objecting party. *Macsenti v. Becker*, 237 F.3d at 1231–32.

¶ 7 The Tenth Circuit concluded that where the *Daubert* objections to expert testimony were made at the close of the evidence, they were untimely and would be reviewed only for plain error. The court found that the expert's conclusion was not so manifestly unreasonable that its admission constituted plain error. 237 F.3d at 1234. In *McKnight v. Johnson Controls, Inc.* 36 F.3d 1396, 1407 (8th Cir.1994), the Eight Circuit held that the failure to object to an expert's trial testimony on the grounds that the expert lacked a scientific basis for his opinions precluded the court's consideration of that issue on appeal, absent plain error. They said that a trial court is not required to exercise its gatekeeping authority over an expert's testimony without an objection. The Ninth Circuit Court of Appeals rejected a defendant's *Daubert* challenge raised as an insufficiency-of-the-evidence argument rather than as a challenge to its admissibility. *Marbled Murrelet v. Babbitt*, 83 F.3d 1060, 1066 (9th Cir.1996), *cert. denied*, *Pacific Lumber Co. v. Marbled Murrelet*, 519 U.S. 1108, 117 S.Ct. 942, 136 L.Ed.2d 831 (1997). The defendant there argued that, whether admitted or not, the scientific evidence failed the *Daubert* test because it was irrelevant and unreliable and therefore was insufficient to support the judgment. The Ninth Circuit reasoned that if permitted to challenge the reliability of the scientific evidence on *Daubert* grounds in the guise of an insufficiency-of-the-evidence argument, after not objecting at trial, the defendant would receive an unfair advantage. 83 F.3d at 1067.

¶ 8 Federal court decisions may be examined for persuasive value when they construe federal evidence rules with language substantially similar to that in our evidence statutes. Title 12 O.S.2001 2702 is "identical in substance" to Federal Rule 702.[4] *Christian v. Gray*, 2003 OK 10 ¶ 6, 65 P.3d 591, 597. The reasoning of the federal courts cited above is in accord with Oklahoma jurisprudence. This Court has held that a party cannot, after introduction of evidence without objection, have it stricken on grounds that it is incompetent. *State v. Planters Gin Co.*, 1935 OK 1090 ¶ 15, 175 Okla. 386, 52 P.2d 710, 713. The fact that evidence may be incompetent under one or more exclusionary rules of evidence does not destroy its probative effect if it is admitted without objection. *Schell v. State ex rel.*

homa, it is incumbent upon a party aggrieved by an order *in limine* to raise the issue at the appropriate time during the trial, either by objecting when the challenged evidence or testimony is admitted or by making an offer of proof of the excluded matter. *Middlebrook v. Imler, Tenny & Kugler, M.D.'s, Inc.* 1985 OK 66 ¶ 12, 713 P.2d 572, 579. At trial, the defendants did reurge their objection to Dr. Strauss' skid test video. The trial court excluded the video after defendants' counsel conducted a *Daubert* voir dire of Dr. Strauss about the video.

4. 12 O.S.2001 2702 provides that if scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise. Section 2702 was amended by Laws 2009, ch. 228, § 18, eff. Nov. 1, 2009, and remains identical in substance to Federal Rule 702, 28 U.S.C.A., Federal Rules of Evidence.

*Hall,* 1966 OK 174, 418 P.2d 690, 691. Incompetent evidence admitted without objection and without any effort to strike it must be given its natural effect. *Sanley v. Wilkinson,* 1924 OK 747, 107 Okla. 54, 229 P. 574, 576. Where no objection is made to testimony, the testimony is admitted and is properly before the trier of fact and must be considered when ruling on a demurrer to the evidence. *D & H Co., Inc. v. Shultz,* 1978 OK 71, 579 P.2d 821, 823–24. This Court has held that where a party fails to object to questions that elicit opinion evidence and fails to move to strike such evidence, the jury is privileged to give consideration to the opinion evidence, notwithstanding that the witness may not have been properly qualified to give the opinion. *Pacific Nat. Fire Ins. Co. v. Woods,* 1963 OK 40, 381 P.2d 824, 829, citing *Superior Oil Co. v. Griffin,* 1960 OK 249, 357 P.2d 987, 994.

¶ 9 Our rules of evidence provide that an expert may testify by opinion or inference and give reasons therefor without previous disclosure of the underlying facts or data, unless required to disclose the underlying facts or data on cross-examination or by the court. 12 O.S.2011 2705.[5] It is the responsibility of the opposing party to establish that the expert is beyond his expertise or, if within his general expertise, that he has failed to provide the proper basis or foundation for his opinions. Allowing the defendants to raise *Daubert* objections to the expert's testimony in the guise of an insufficiency-of-the-evidence argument after the testimony has been admitted without objection deprives the expert of the opportunity to offer other supporting proof. See *Marbled Murrelet,* 83 F.3d at 1067. *Daubert* creates a gatekeeping function for the trial court regarding the admission of an expert's evidence, when challenged. It does not enable a party to allow the expert's testimony to be admitted and then attempt to discredit that testimony on *Daubert* grounds after all the evidence is in. By failing to object, the error is waived on appeal, in the absence of fundamental error.

¶ 10 Fundamental error is error that compromises the integrity of the proceeding to such a degree that the error has a substantial effect on the rights of one or more of the parties. *Sullivan v. Forty–Second West Corp.,* 1998 OK 48, 961 P.2d 801, 803. We agree with the Court of Civil Appeals that there was no fundamental error. The admission of Dr. Strauss' opinions on causation, where defendants failed to object to those opinions, did not seriously affect the fairness or integrity of the trial. Dr. Strauss' testimony was not so manifestly unreasonable that its admission constituted fundamental error. Defendants may have had a trial strategy for not objecting; nevertheless, the opinions and testimony not objected to stand as evidence to be considered by the jury, and by the trial judge in ruling on the motion for judgment notwithstanding the verdict.

¶ 11 In ruling on a motion for judgment notwithstanding the verdict, the trial judge considers all evidence favorable to the nonmoving party and disregards all evidence favorable to the movant. That is also our standard on review of the trial judge's ruling. *Computer Publications, Inc. v. Welton,* 2002 OK 50 ¶ 6, 49 P.3d 732, 735. We must affirm a jury verdict if there is any competent evidence reasonably tending to support it, evidence which is relevant and material to the issue to be determined. *Jos. A. Coy Co. v. Younger,* 1943 OK 160, 192 Okla. 348, 136 P.2d 890. We do not weigh the evidence. We consider all the evidence tending to support the verdict, together with every reasonable inference from it, and must affirm unless there is an entire absence of proof on a material issue.

¶ 12 Dr. Strauss qualified without objection as an expert in the fields of accident reconstruction, biomechanical engineering and human factors. Dr. Strauss has a commercial drivers license with air brake endorsement.

---

5. **§ 2705. Disclosure of Facts or Data Underlying Expert Opinion**
 The expert may testify in terms of opinion or inference and give reasons therefor without previous disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination.

Dr. Strauss relied upon scene photographs taken by the highway patrol and reviewed survey data of the accident prepared with the Total Station surveying tool, police reports, witness statements, deposition testimony, specifications on the pickup truck and maintenance manual for the bus. Dr. Strauss also examined maintenance records for the bus, including a repair ticket from Jefferson Lines in Tulsa, dated more than four months prior to the accident, which stated that the bus "needs steer and tag brakes urgently." He testified that maintenance records are an important piece of information from a reconstruction standpoint. He explained steer and tag brakes for the jury and advised them that all three axles on the bus have brakes, for a total of six brakes. He used a model of a portion of an air brake similar to that of defendants' bus to demonstrate how air brakes work and to show how air brakes are checked or inspected, and how they can be adjusted. He testified that regular air brake maintenance is important to prevent various kinds of malfunctions, and training for the commercial driver's license requires daily pretrip inspections and knowledge of how to check the air brakes during such an inspection. He deemed it critical for anyone who is operating a vehicle with air brakes to understand how they work and how to check them because air brakes can fail, not just from being bad, but from not being adjusted properly. Evidence elicited from the defendants, Pedro and Elias Rodriguez, and the driver, David Perez, showed that no pretrip inspection of the bus was conducted and that they did not have commercial drivers' licenses. The driver testified by deposition that he had not received any specialized training for driving a bus. Elias Rodriguez stated that he had the brakes repaired in Mexico, but there were no repair tickets or receipts showing that the repairs were done.

¶ 13 Photographs taken at the scene of the accident by Highway Patrol Trooper Brandon Schneider depicted a single preimpact skidmark by the bus. Highway Patrol Trooper Douglas George measured the preimpact skidmark left by the bus at 98 feet long. He testified that unless there is an antilock braking system, generally you will see skidmarks left by each of the wheels.

Trooper Dennis Dickens testified that there was one very distinct black skidmark from the right front tire of the bus, going off to the right from the outside lane. Trooper Dickens testified that there should have been more than one black mark, since the bus did not have an antilock braking system. Dr. Strauss testified that the brakes on the two rear axles should have locked up on both the left and right sides if they were properly adjusted and in good condition. He testified that with properly adjusted bus brakes there would be more uniform skids on both right and left; that if the air brakes were working properly, and the driver stepped on the brakes all the way, one should see two long skidmarks on both the right and left sides of the bus; and because the bus was not fully loaded it should have locked up easier so that one should "definitely see skids." Tr. Vol. 1, p. 232. The single preimpact skidmark left by the bus was from the front right tire, which he said should not have locked up. The preimpact single skidmark also veered toward the right, which Dr. Strauss attributed to brake imbalance. The lack of expected skidmarks and the pull to the right indicated to Dr. Strauss that the brakes were not working. The bus driver testified, by deposition, that he hit the brakes but did not steer to the right. Other tire marks were laid down postimpact, which plaintiffs' expert attributed to the pickup's tires as they were pushed forward by the bus.

¶ 14 Dr. Strauss testified that the front passenger side of Covel's pickup collided with the right front side of the bus. The collision resulted in an intrusion of Covel's engine into the passenger compartment of his pickup and the intrusion of Covel's vehicle into the right front side of the bus. Dr. Strauss testified that intrusion is the worst thing that can happen in an accident. The bus pushed all the contents of the engine compartment into the passenger compartment and "you can't survive that." Tr. Vol. 1, p. 256. Dr. Strauss testified that a bus with properly working brakes would have slowed enough so that the collision would not have been head-on and the bus would have hit the truck bed rather than the truck cab. If the truck bed had been hit instead, the passenger compart-

ment would be intact, "so it's a tremendous difference." *Id.* It was Dr. Strauss' opinion that if the bus had been able to stop sooner and the collision not head-on, Mr. Covel would not have died in the accident.

¶ 15 By being qualified as an expert in accident reconstruction, biomechanics and human factors, Dr. Strauss was qualified to give opinions and conclusions based on his training and experience in those fields. Where the expert states the reasons for his opinions and conclusions, they are not *ipse dixit.* The factual basis of an expert's testimony generally goes to the credibility of the testimony and the party opposing can attack the factual basis on cross-examination. Dr. Strauss testified for approximately four hours. The defendants did not cross-examine him about the scientific foundations or methods underlying his conclusions and opinions.

¶ 16 Defendants argue that Strauss did not perform any of the "typical" accident reconstruction calculations to determine the effect of brake malfunction on the actual braking efficiency of the bus. They argue that their expert's calculations reflected that the bus' brakes performed well within acceptable standards and that the bus driver only had seconds in which to react. Defendants' expert, Mr. Pfeiffer, made measurements of the accident scene and the road geometry, using the electronic Total Station measuring system. Mr. Pfeiffer testified that the bus had skidded prior to collision and left approximately 98 feet of skidmarks from the right front wheel. Mr. Pfeiffer testified that the bus had slowed from a speed of approximately 65 mph to 51 mph, and that the pickup had slowed to a speed of about 62 mph. It was his opinion that the bus could not have avoided the collision, that it could not have slowed any faster and that the driver could not have reacted any faster than he did. On cross-examination, defendants' expert agreed that up to the point of impact there was only one visible skidmark and that it veered to the right. Defendants' expert maintained that, due to the shape of the pull to the right, the bus driver must have steered to the right without realizing it. Defendants' expert maintained that the post-impact tire marks were from the left tires of the bus and not from the pickup.

¶ 17 The conclusions and opinions of the expert witnesses were in conflict. Both experts relied upon Total Station electronic survey measurements of the accident scene and photographs taken at the scene. Neither expert examined the bus' brakes. When the evidence is conflicting, it is for the jury to decide. Considering all evidence favorable to the nonmoving party and disregarding all evidence favorable to the movant, we cannot find error in the trial judge's denial of defendants' motion for judgment notwithstanding the verdict. The plaintiffs did not contend that defendants' bus caused the accident; plaintiffs contended that the faulty brakes resulted in a more severe injury to Mr. Covel; i.e., his death. The plaintiffs introduced evidence that defendants' bus was operating on the highway with brakes that needed urgent repair; that the brakes were not working as they should have; that the chance of greater injury is present if a collision is head-on and intrusion occurs into the vehicle; that the impact with the bus caused intrusion of the pickup's engine into the cab compartment; that such an intrusion was not survivable; and that the bus owners were required by federal law to conduct pretrip inspections and keep the brakes properly adjusted, but that they failed to do so, and such failure was the direct cause of Mr. Covel's death. It is foreseeable that a motor carrier would encounter a situation wherein it needed to have brakes in good working order and that failure to do so might result in failure to stop in time, resulting in more severe injuries or a fatality in the event of an accident. The plaintiffs had the burden of proving that defendants' brakes malfunctioned and that the malfunction was more probably than not the cause of Mr. Covel's death. Whether defendants were negligent and, if negligent, whether the consequences could reasonably have been foreseen or anticipated, were questions for the jury to decide. The jury found for the plaintiffs and there is competent evidence to support the jury's verdict.

¶ 18 The Court of Civil Appeals did not address the defendants' other appellate contention that the jury's verdict was the prod-

uct of unfair passion and prejudice because: plaintiffs' counsel appealed to the jury during closing arguments to punish the defendants with a substantial actual damages award; the decedent's son, country singer Toby Keith, and his siblings were improperly named as plaintiffs; plaintiff's counsel unfairly contrasted the defendants' Mexican nationality against the asserted patriotism of the decedent and his famous son; the trial judge's decision not to bifurcate the trial meant that Toby Keith and the other family members could introduce prejudicial testimony during the initial phase of trial even though that testimony was not relevant to negligence or causation; jurors were permitted to learn that the defendants' insurance company was a named defendant; the trial court repeatedly constrained the defendants' ability to present their theory of the case, while permitting Dr. Strauss to range far and wide in his opinions; and the trial judge did not instruct the jury properly on "how to determine whether negligence by defendants was the cause of the decedent's death."

¶ 19 The defendants maintained that the Covel children were improperly joined as plaintiffs and that the only proper plaintiff was Mrs. Covel, as the personal representative of the estate, pursuant to Oklahoma's wrongful death statute, 12 O.S. 1054.[6] The defendants did not file any objection to joinder of the Covel children as plaintiffs before the trial. In *Mitchell v. Amerada Hess Corp.*, 1981 OK 149 ¶ 15, 638 P.2d 441, 446, we said that the existence of an excessive party plaintiff is not reversible error when that issue is not raised before the issues are joined on the merits and the real party in interest appears as a party plaintiff.

██ ¶ 20 The plaintiffs originally sued several other defendants, including the driver of the car alleged to have bumped Covel's vehicle in the northbound lanes prior to the accident. The trial judge's initial decision to bifurcate was made upon request of one of those parties because several of the plaintiffs'

claims pertained to conduct subsequent to the accident. Each of those defendants achieved dismissal or settled with plaintiffs prior to trial. The plaintiffs asked the trial judge to reconsider the decision to bifurcate. The defendants objected on the grounds that they had not anticipated trying damages with liability and because of the "celebrity issue." The court expressed concern, but stated that celebrity was a fact of the case and that Toby Keith would be in the courtroom, so the celebrity issue would have to be dealt with in any event. We do not find that there was any abuse of discretion on the part of the trial judge in reconsidering and ultimately deciding not to bifurcate the trial.

██ ¶ 21 Defendants complain that plaintiff's counsel, during closing argument, urged the jury to award a substantial verdict in order to make sure that bus companies "operate properly in McClain County, in Oklahoma and in the United States." Defendants objected, and the trial court admonished the jury to disregard argument of counsel regarding punishment of the bus or insurance company. Defendants also complain of: plaintiffs' description during opening statements about the defendants' bus route to Mexico; plaintiffs asking the highway patrol troopers about language obstacles faced with the bus's passengers; asking questions about the origins and ancestry of the Rodriguez defendants; Mrs. Covel's remarks about finding Mexican liquor stickers at the accident scene; and plaintiffs' counsel's comparison of the defendants' compliance with Mexican regulations versus noncompliance with certain U.S. regulations. They assert that the prejudicial references assured that the defendants would be seen as Mexican bus owners who transported Mexican people and goods back and forth from Oklahoma to Mexico, while Mr. Covel would be perceived as an avowed patriot who had served his country in the military and had fathered a country singing superstar and writer of patriotic songs. The defendants did not object to the questions or statements. They argue that object-

---

6. **§ 1054. Action for death-Who may sue**
 In all cases where the residence of the party whose death has been caused as set forth in the preceding section of this article is at the time of his death in any other state or territory, or when, being a resident of this state, no personal representative is or has been appointed, the action provided in the said section may be brought by the widow, or where there is no widow, by the next of kin of such deceased.

**714**

ing to each comment would have highlighted the remarks in the minds of the jurors. They contend that it was incumbent on the trial court to "rein in" the plaintiffs whenever they "crossed the line."

¶ 22 Attorneys have wide latitude in opening and closing statements, subject to the trial court's control, and limitation of the scope of the arguments is within the trial court's discretion. *Lerma v. Wal–Mart Stores, Inc.*, 2006 OK 84, 148 P.3d 880, 885. An admonition to the jury to disregard an improper argument cures any prejudice that might be created thereby since it cannot be presumed as a matter of law that the jury will fail to heed the admonition given by the court. *Middlebrook v. Imler, Tenny & Kugler M.D.'s, Inc.*, 1985 OK 66, 713 P.2d 572, 583. In order for the alleged misconduct of counsel in argument to the jury to effect a reversal of the judgment it must appear that substantial prejudice resulted therefrom and that the jury was influenced thereby to the material detriment of the party complaining. *Oklahoma Turnpike Authority v. Daniel*, 1965 OK 7, 398 P.2d 515, 518. That the defendants' business was transporting passengers to and from Mexico was a fact in the case. That Toby Keith is the son of the decedent was a fact in the case. The jury was aware of these facts. At the hearing on motion for JNOV, the trial judge remarked that, although she initially was concerned about the celebrity issue and having an interpreter for the defendants, she felt that it was not a problem in the conduct of the trial because everyone conducted themselves in a professional manner and tried to avert any kind of prejudice being part of the trial.[7] We have reviewed the matter and we conclude that statements of counsel were not so unfairly prejudicial as to render the jury's verdict a product of passion and prejudice. The defendants did not object or move for a mistrial. Alleged prejudicial remarks of counsel are not preserved for review in this Court unless objected to at the time the statements are made. *Bateman v. Glenn*, 1969 OK 158, 459 P.2d 854, 858. The defendants are deemed to have taken their chances with the jury.

¶ 23 Defendants complain that their requested supplemental instruction on causation was not given. The defendants wished to instruct the jury that, even if all the negligent acts complained of were true, the jury could not find against the defendants unless they found that their negligence was the proximate cause of Mr. Covel's injuries. The proposed instruction stated:

> The proximate cause of an injury must be the efficient cause which sets in motion the chain of circumstances leading to the injury. If the negligence complained of merely furnishes a condition by which the injury was made possible and a subsequent independent act caused the injury, then the existence of such a condition is not the proximate cause of the injury.

The plaintiffs responded that the requested instruction is not a uniform instruction and was unnecessary because the standard instruction on the elements of negligence sufficiently instructs the jury on causation. Plaintiffs contend that the instruction does not fit the facts because there was no subsequent independent act after the negligence of defendants.

¶ 24 Defendants also contend that the negligence per se instructions to the jury about regulations that defendants violated should not have been given because they were not applicable to the issues in the case. Jury Instruction No. 9 was styled Negligence Per Se—Violation of Statute or Regulation. This instruction informed the jury that in addition to the duty to exercise ordinary care there are also duties imposed by statute, and that if they found that a person violated any one *of the following statutes or federal regulations,* and *that the violation was the direct cause of the injury,* then such violation in and of itself would make such person negligent. (emphasis added). Instruction 9 listed statutes in force and effect in the State of Oklahoma at the time of the occurrence that require commercial chauffeurs to be licensed; that prohibit crossing the median into opposing traffic lanes when driving on divided highways and that prohibit driving at a speed

---

7. Tr., April 2, 2008, p. 38.

in excess of 70 mph on a four-lane divided highway.

¶ 25 Instruction 10 was styled Negligence Per Se–Violation of Statute or Regulation and listed certain federal motor carrier safety regulations in force and effect at the time of the occurrence:

—Commercial Driver's License Standards; Requirements and Penalties

—Qualifications of Drivers and Longer Combination Vehicle (LCV) Driver Instructors;

8. Instruction No. 10 provided, in pertinent part:

TITLE 49—TRANSPORTATION
CHAPTER III FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION,
DEPARTMENT OF TRANSPORTATION
**Part 383 Commercial Driver's License Standards; Requirements and Penalties**
**Sec. 383.1 Purpose and Scope:**
(a) the purpose of this part is to help reduce or prevent truck and bus accidents, fatalities, and injuries by requiring drivers to have a single commercial motor vehicle driver's license and by disqualifying drivers who operate commercial motor vehicles in an unsafe manner.
**Sec. 391.11 General qualifications of drivers.**
(a) A person shall not drive a commercial motor vehicle unless he/she is qualified to drive a commercial motor vehicle. Except as provided in Sec. 391.63, a motor carrier shall not require or permit a person to drive a commercial motor vehicle unless that person is qualified to drive a commercial motor vehicle.
(5) has a currently valid commercial motor vehicle operator's license issued only by one State or jurisdiction.
(8) Has successfully completed a driver's road test and has been issued a certificate of driver's road test in accordance with Sec. 391.31, or has presented an operator's license or a certificate of road test which the motor carrier that employs him/her has accepted as equivalent to a road test in accordance with Sec. 391.33.
**Sec. 383.113 Required skills**
(a) Basic vehicle control skills. All applicants for a CDL must possess and demonstrate basic motor vehicle control skills for each vehicle group which the driver operates or expects to operate. These skills should include the ability to start, to stop, and to move the vehicle forward and backward in a safe manner.
(b) Safe driving skills. All applicants for a CDL must possess and demonstrate the safe driving skills for their vehicle group. These skills should include proper visual search methods, appropriate use of signals, speed control for weather and traffic conditions, and ability to position the motor vehicle correctly when changing lanes or turning.

—Required Knowledge and Skills for CDL license applicants;

—Road test requirement for driver of commercial motor vehicles;

—Equipment, inspection and use.[8]

Instruction No. 9 set out laws applicable to plaintiff's decedent as well as to the defendants. Instruction 10 set out the federal regulations applicable to commercial vehicle operators and drivers.

 ¶ 26 It is the duty of the trial court to give instructions that accurately re-

(c) Air brake skills. Except as provided in Sec. 393.95, all applicants shall demonstrate the following skills with respect to inspection and operation of air brakes:
(1) Pre-trip inspection skills. Applicants shall demonstrate the skills necessary to conduct a pre-trip inspection which includes the ability to:
(i) Locate and verbally identify air brake operating controls and monitoring devices;
(ii) Determine the motor vehicle's brake system condition for proper adjustments and that air system connections between motor vehicles have been properly made and secured;
**Sec. 393.31 Road Test.**
(a) A person shall not drive a commercial motor vehicle unless he/she has first successfully completed a road test and has been issued a certificate of driver's road test in accordance with this section.
(b) The road test shall be given by the motor carrier or a person designated by it. However, a driver who is a motor carrier must be given a test by a person other than himself/herself. The test shall be given by a person who is competent to evaluate and determine whether the person who takes the test has demonstrated that he/she is capable of operating the commercial motor vehicle, and associated equipment, that the motor carrier intends to assign him/her.
(c) The road test must be of sufficient duration to enable the person who gives it to evaluate the skill of the person who takes it at handling the commercial motor vehicle, and associated equipment, that the motor carrier intends to assign him/her. As a minimum, the person who takes the test must be tested, while operating the type of commercial motor vehicle the motor carrier intends to assign him/her, on his/her skill at performing each of the following operations:
(1) The pretrip inspection required by Sec. 392.7 of this subchapter.
**Sec. 392.7 Equipment, inspection and use.**
No commercial motor vehicle shall be driven unless the driver is satisfied that the following parts and accessories are in good working order, nor shall any driver fail to use or make use of such parts and accessories when and as needed: Service brakes, including trailer brake connections.
Parking (hand) brake.

flect the law and apply to the issues. The test of reversible error in giving jury instructions is whether the jury was misled to the extent of rendering a different verdict than it would have rendered if the errors alleged had not occurred. *Johnson v. Ford Motor Co.*, 2002 OK 24 ¶ 14, 45 P.3d 86, 92–93. The trial judge instructed the jury on negligence, direct causation, comparative negligence (which included contributory negligence), negligence per se, and unavoidable accident. The jury was instructed that their decision must be based on probabilities and not possibilities, and not upon speculation or guesswork. The jury was also instructed on concurrent causes, the burden of proof and weight of the evidence. We conclude that there was no prejudicial misstatement of law and no fundamental error in the instructions given on negligence per se. The jury was instructed three times on causation.[9] We find that the trial did not err in refusing to give the defendants' requested instruction on causation.

¶ 27 Defendants argue that the trial court "repeatedly constrained Defendants' ability to present their theory of the case, while permitting Dr. Strauss to range far and wide in his opinions." We find this argument to be without merit. The defendants did not object to Dr. Strauss' testimony or his opinions about what witnesses and parties would have been able to observe or what might have happened in the northbound lanes of traffic. Defendants asserted that Mr. Covel may have had a medical event that caused the accident, and they cross-examined Mrs. Covel about her husband's health history. They did not call Mr. Covel's doctors as witnesses or introduce any of his medical records at trial. The jury was instructed on contributory negligence and that it was negligence per se for a driver to be on the wrong side of the road, as Mr. Covel was. We are not persuaded that the defendants were constrained by the trial court in presenting their theory of the case.

¶ 28 Defendants assert that the plaintiffs improperly informed the jury that Republic Western Insurance Company was a named defendant in the case. The parties stipulated that, at the time of the collision, Republic Western Insurance Company provided liability insurance to the defendants, doing business as Rodriguez Transportes, as required per statute. The stipulations were read to the jury at the beginning of the trial, without objection from the defendants. We find this argument to be without merit.

¶ 29 We agree with the trial judge that there was no irregularity in the trial proceedings and that the damages awarded were not excessive and do not appear to have been given as a result of passion or prejudice. The plaintiffs asked the jury to award $1.7 million dollars per plaintiff. The jury awarded considerably less. We find no error in the trial court's denial of defendants' motion for new trial, remittitur or JNOV.

¶ 30 After the record on appeal was transmitted to the Supreme Court Clerk, the defendants filed a motion to direct transmission of redacted trial court depositions for inclusion in the record on appeal. Ruling on the motion was deferred to the reviewing court by order dated May 13, 2009. The Court of Civil Appeals did not rule on the motion. The issue was not raised in the defendants' certiorari paperwork filed with this Court and is hereby denied. Defendants moved for oral argument before this Court *en banc* and the plaintiffs filed an objection. We find that oral argument would not materially assist the Court and we deny the motion.

¶ 31 In conclusion, we affirm the trial court's denial of the defendants' motion for

9. Instruction No. 5 instructed the jury that a party claiming damages has the burden of proving that he or she has sustained injury, that the party from whom he or she seeks to recover was negligent and that such negligence was a direct cause of the injury sustained by the party.
Instruction No. 7 defined direct cause as a cause which, in a natural and continuous sequence, produces injury and without which the injury would not have happened, and instructed that for negligence to be a direct cause, it is necessary that some injury to a person in H.K. Covel's situation must have been a reasonably foreseeable result of negligence.
Instruction No. 9 instructed the jury that if a person violated any of the Oklahoma statutes or federal regulations listed, and the violation was the direct cause of the injury, then such violation would make such person negligent.

judgment notwithstanding the verdict, new trial or remittitur because there was competent evidence to support the jury's verdict and the verdict was not the product of passion or prejudice.

**THE OPINION OF THE COURT OF CIVIL APPEALS IS VACATED; MOTION FOR ORAL ARGUMENT DENIED; TRIAL COURT AFFIRMED.**

¶32 VOTE: COLBERT, V.C.J., WATT, EDMONDSON, REIF, COMBS, and GURICH, JJ., concur; KAUGER and WINCHESTER, JJ., concur in result; TAYLOR, C.J., by separate writing, dissents.

TAYLOR, C.J., dissenting.

¶33 Mr. Covel was northbound on I–35. He crossed the median and went into the southbound outside lane and collided head-on with the bus. It is undisputed that the bus was obeying all traffic laws and had brakes that met all federal standards. The brakes on the bus had absolutely nothing to do with this collision. Mr. Covel uncontrollably careened in front of the bus and crashed into the bus. This was a sudden, instantaneous and unavoidable event. No matter what kind of brakes the bus may have had, there is nothing the bus driver can do about a flying car instantly appearing from the other side of the highway. It is fundamentally unfair for the bus insurance company to be required to pay over $2.8 million because Mr. Covel lost control of his vehicle. The Court of Civil Appeals properly found that the plaintiff's expert opinions were not based on scientific foundation and that the opinion on causation was a bare assertion and totally insufficient to support this huge verdict.