2016 OK 102

**C&H POWER LINE CONSTRUCTION CO., Plaintiff/Appellee,**

v.

**ENTERPRISE PRODUCTS OPERATING, LLC, and Enterprise Texas Pipeline, LLC, Defendants/Appellants.**

**No. 112,177**

Supreme Court of Oklahoma.

FILED OCTOBER 11, 2016

Rehearing Denied December 12, 2016

Terry J. Barker, Joseph C. Woltz, Robert N. Lawrence, Kelly J. Tompkins, PEZOLD BARKER & WOLTZ, Tulsa, Oklahoma, Jody R. Nathan, Lawrence W. Zeringue, STAUFFER & NATHAN, P.C., Tulsa, Oklahoma, Kevin R. Carlson, GARRISON BROWN & CARLSON, Bartlesville, Oklahoma, for the defendants/appellants.

Winchester, J.

¶ 1 The appellants/defendants, Enterprise Products Operating, LLC, and Enterprise Texas Pipeline, LLC, [hereinafter "Enterprise"] have raised issues regarding jury instructions, denial by the trial court of their motion for directed verdict, exclusion of evidence offered by the appellants, inclusion of inadmissible evidence, acceptance of a less than unanimous verdict, and awarding improper interest on the judgment. We hold that the trial court did not make any error requiring reversal or remand. The judgment of the trial court is affirmed.

## I. FACTS

¶ 2 The plaintiff/appellee, C&H Power Line Construction Company, built and repaired power lines. On June 7, 2010, while at a site in Texas, James Neese, a veteran employee of C&H was operating a 108,000 pound Hughes LLDH pressure drill equipped with a four foot diameter carbide tooth rock-drilling-style bit. He was drilling a hole for a power line tower. His auger struck an unmarked gas pipeline thirty-six inches in diameter with an operating pressure of over 1,000 pounds per square inch. He was killed in the resulting explosion and another C&H employee, a mechanic, was severely burned. Before drilling, C&H called the Texas One–Call system to have companies in their work area mark their lines. Although Enterprise was notified within the proper time, it did not mark its line. The other pipeline companies marked their lines.

¶ 3 C&H alleged that it was in the process of selling the company immediately before the accident and had a letter of intent for $33 million up front, with an earn-out provision for $10 million more. C&H claimed that the explosion caused the demise of the company,

M. David Riggs, Donald M. Bingham, Stephanie L. Theban, RIGGS, ABNEY, NEAL, TURPEN, ORBISON & LEWIS, PC.,Tulsa, Oklahoma, Robert A. Nance, RIGGS, ABNEY, NEAL, TURPEN, ORBISON & LEWIS, PC., Oklahoma City, Oklahoma, for the plaintiff/appellee.

finally resulting in a sale of the company at substantially less than its value at the time of the accident.

¶ 4 The case was tried in the district court of Washington County, Oklahoma, but the parties agree that the substantive law would be that of Texas. The jury awarded $26 million in actual damages and $1 million in punitive damages. The trial court entered judgment, including $3,476,160 in pre-judgment interest for a total award of $30,476,160.

## I. JURY INSTRUCTIONS

██ ¶ 5 Enterprise asserts that the trial court permitted the jury to award damages prohibited by law, that is, damages for death and injury to employees; damages for emotional distress by a corporation; and damages for changes in C&H's workers' compensation and its industry ratings. Enterprise argues that the trial court refused its proposed instructions limiting damages to those lawfully recoverable. Enterprise concludes that the jury verdict must be reversed.

¶ 6 Enterprise challenges the trial court's Instruction No. 19 as not properly instructing the jury on lawfully recoverable damages. That instruction provided:

"If you decide for the Plaintiff on the question of liability you must then determine the amount of money that will reasonably and fairly compensate Plaintiff for the loss or destruction of the Plaintiff's business.

"For business lost or destroyed, which loss or damage was proximately caused by the occurrence in question, that amount is the difference between the market value of the business immediately before and immediately after the occurrence in question.

"'Market value' means the amount that would be paid in cash by a willing buyer who desires to buy, but is not required to buy, to a willing seller who desires to sell, but is under no necessity of selling."

██ ¶ 7 Texas law provides that "the proper measure of damages for destruction of a business is measured by the difference between the value of the business before and after the injury or destruction." *Sawyer v.*

*Fitts*, 630 S.W.2d 872, 874–875 (Tex. App. 1982). Enterprise cites this very case. In the *Sawyer* case, the business was completely destroyed and Enterprise argues that damages based on market value of a business are available only if a business is totally destroyed and not when it continued as a business. It proposed Revised Instruction 21 to instruct the jury that C&H had to prove that its business was totally destroyed by the accident before C&H could seek damages based on the total value of its business. However, the wording of the rule cited in *Sawyer* contemplates the possibility that there may be some value after the destruction of a business, which amount is stated as "the difference between the value of the business before and after the injury or destruction." *Sawyer* cites *Waples–Platter Co. v. Commercial Standard Ins. Co.*, 156 Tex. 234, 294 S.W.2d 375 (1956) where a building and its contents including fixtures and merchandise were damaged by fire. The Supreme Court of Texas held that the measure of damages in such a case is the "reasonable cash market values of the property at the time it was destroyed by the fire, or if not totally destroyed, the difference between the reasonable cash market values of the property immediately before and immediately after it was damaged." *Sawyer*, 630 S.W.2d at 874. This is correctly reflected in the trial court's Instruction No. 19, "[T]he amount of money that will reasonably and fairly compensate Plaintiff for the loss or destruction of the Plaintiff's business ... is the difference between the market value of the business immediately before and immediately after the occurrence in question."

¶ 8 In another approach to this same issue, Enterprise claims the court failed to give the proper instruction on negligence. In its proposed Instruction No. 15 Enterprise inserts its theory that C&H has the burden of proving that its business was totally destroyed. In fact, it inserted the theory of total destruction twice into the four sentences. Enterprise's theory is incorrect, as discussed above, and its proposed Instruction No. 15 would be an erroneous instruction had it been given. The instructions by the court on this matter properly reflects the law.

¶ 9 Enterprise also argues that the court's Instruction No. 19 failed to properly limit the damages. The company proposed Revised Instruction 20 on causation of damages so the jury could be instructed to limit damages to those caused by Enterprise and by the accident. Its proposed Revised Instruction 25 would have advised the jury that it could not award damages for death or injury to employees, emotional distress to C&H, or changes in workers' compensation ratings.

¶ 10 None of these proposed instructions accurately reflects the law that the court properly instructed the jury to follow, which is to ascertain the difference between the market value of the business immediately before and immediately after the occurrence. The law considers what a buyer would be willing to pay for the company before the accident and after the accident. Experts for both parties testified to the items the experts asserted should be considered when valuing the company before and after the accident. The theory of C&H was that the company had been and would have continued to increase in value. The theory of Enterprise was that the value of C&H was declining in value. Those involve fact questions properly determined by the jury.

¶ 11 If the value of the company is set immediately before the accident, and then individual items of damage are deducted, the result no longer represents what a willing buyer would pay to purchase the business. For example, Enterprise argues that employers may not bring a wrongful death action for the death of an employee, and it objects because the effect of the death of C&H's employee was not subtracted from the amount that C&H's expert set for the company. A wrongful death action is not a part of these proceedings. An employee died, but C&H has not made a claim based on his death. C&H's damages are based on what a purchaser of the company would have paid immediately before and after the injury.

¶ 12 The value of the company is a package consisting of, among other things, tangible items such as machinery, and intangibles such as goodwill. All of those items are considered in the decision of a buyer to purchase a company. Loss of a key highly skilled employee, whether through death or disability, affects the value, but the damage is not the same as that for wrongful death. Even if a company cannot recover separate damages for emotional distress, nor for changes in workers' compensation ratings, the emotional outlook and ratings barriers to acquiring new jobs still have an impact on the value of a company to a prospective buyer, who is entitled to consider these items in making an offer for the purchase of the business.

¶ 13 C&H's expert [1] testified that the methods he used to set a value on C&H were based on "Generally Accepted Accounting Principles" (GAAP). That expression is a term of art, which carries with it specific legal consequences. *Godchaux v. Conveying Techniques, Inc.*, 846 F.2d 306, 315 (5th Cir. 1988). The *Godchaux* case explained that standard accounting practice recognizes a hierarchy of general principles and published standards of the American Institute of Certified Public Accountants. The prevalent customs and usages of the accounting profession are followed. *Godchaux*, 846 F.2d at 315. GAAP is not a "canonical set of rules that will insure identical accounting treatment of identical transactions," and so GAAP tolerates "a range of 'reasonable' treatments." *Godchaux*, 846 F.2d at 315, citing *Thor Power Tool Co. v. Commissioner*, 439 U.S. 522, 544, 99 S.Ct. 773, 787, 58 L.Ed.2d 785 (1979).

---

1. The expert was David Richard Payne, a Certified Public Accountant who formed D.R. Payne & Associates in 1992. He holds two certifications: Certified Insolvency and Restructuring Advisor, CIRA, and Certified Turnaround Professional, CTP. He holds three appraisal certifications: Accredited Senior Appraiser, Accredited in Business Valuation, and a certification in distress business valuation. He is regularly appointed by both state courts in Oklahoma and federal courts to investigate failing businesses and companies that are undergoing some form of operational or financial dispute. Additionally, a regular part of his duties in the state and federal courts is to serve as a receiver of companies to aid in working their way out of insolvency problems. He testified that in his career of business valuations similar to this case, he had in excess of 30,000 hours appraising companies across numerous industries from construction to energy to high tech and service companies.

¶ 14 C&H's expert testified about methods used to value a company and to determine the diminution of value. He testified that prior to the accident; C&H had enterprise value of $39,600,000, asset value of $39,000,000, market approach value of $36,193,000 and income approach value of $32,131,000, and that if a buyer wants an opinion on the value of a business, a workable range is plus or minus ten percent. The expert explained each of these methods of placing a value on a company to the jury, in detail, with demonstrative charts. He further testified that before the explosion C&H was a business very likely to succeed. C&H presented evidence that it sold its remaining assets for $12,000,000 in October of 2011. This evidence presented by C&H gave the jurors four methods of placing a value on a company immediately before the accident according to Generally Accepted Accounting Principles. In addition, C&H presented evidence of the sale amount being discussed by a party that expressed interest in purchasing the company just prior to the accident.

¶ 15 Enterprise chose to challenge these values placed on C&H by asserting what it believed should be excluded from these GAAP calculations. On cross-examination C&H's expert explained that measuring individual elements results in an overlap, which makes the resulting value less reliable and more speculative. Enterprise's expert testified about C&H's financial statements and documents, debts, profits and losses. Enterprise includes a substantial amount of facts in its briefs, facts that were presented to the jury and which Enterprise believes should be persuasive in supporting its viewpoint that the verdict against it was erroneous.

¶ 16 In *Florafax International, Inc. v. GTE Market Resources, Inc.*, 1997 OK 7, ¶ 3, 933 P.2d 282, 287, this Court set forth the general appellate standard of review concerning actions at law tried to a jury.

"In an action at law, a jury verdict is conclusive as to all disputed facts and all conflicting statements, and where there is any competent evidence reasonably tending to support the verdict of the jury, this Court will not disturb the jury's verdict or the trial court's judgment based thereon.

Where such competent evidence exists, and no prejudicial errors are shown in the trial court's instructions to the jury or rulings on legal questions presented during trial, the verdict will not be disturbed on appeal. In an appeal from a case tried and decided by a jury an appellate court's duty is not to weigh the evidence and determine which side produced evidence of greater weight, i.e. it is not an appellate court's function to decide where the preponderance of the evidence lies—that job in our system of justice has been reposed in the jury. In a jury-tried case, it is the jury that acts as the exclusive arbiter of the credibility of the witnesses. Finally, the sufficiency of the evidence to sustain a judgment in an action of legal cognizance is determined by an appellate court in light of the evidence tending to support it, together with every reasonable inference deducible therefrom, rejecting all evidence adduced by the adverse party which conflicts with it." [Citations omitted.]

¶ 17 The trial court must give jury instructions that accurately reflect the law and apply to the issues. *Covel v. Rodriguez*, 2012 OK 5, ¶ 26, 272 P.3d 705, 715–716. Jury Instruction No. 19 accurately reflects the law as stated in *Sawyer*, and directly addresses one of the issues presented and tried in this case, and that is whether C&H's business had been destroyed by the culpable actions of Enterprise. The instruction is not erroneous. Additionally, the testimony of C&H's expert reasonably supported the verdict of the jury. The verdict was within the range of his evaluation of the value of the company immediately before the accident, and within the amount paid for the company when it was subsequently sold. The jury heard that evidence, heard the proper instruction, and reached its verdict based on that evidence.

¶ 18 The final assertion of error regarding an instruction by the trial court involves Enterprise's "Revised Jury Instruction No. 19." The title given this proposed instruction is "Contributory/Comparative Negligence Per Se." It would instruct that as a part of Enterprise's defense it claims that the plaintiff or the non-parties were negligent by violating either statutes or regula-

tions, which if proven, was the proximate cause of the injury. That is a negligence per se defense. A portion of that five-page instruction quotes sections of the Texas Administrative Code, tit. 16, including § 18.4(e). It provides circumstances under which an excavator (C&H) must give a second notice to the notification center, when the excavator knows of the existence of an underground pipeline, lacks a positive response for the excavation area, or that response is unclear or obviously erroneous.

¶ 19 C&H asserts that Enterprise mischaracterized the facts. Enterprise attempts to use C&H's knowledge of other pipelines in the area. C&H knew where those pipelines were located. There was no doubt involved about pipelines from other companies. The question was whether Enterprise had a pipeline in the area. Enterprise's agent had reported to C&H's agent that it was "all clear." Had C&H called a second time, the same agent would have taken the call. All this evidence was before the jury. Witnesses were questioned about this and the attorneys argued their respective sides during closing. The trial court properly rejected Enterprise's proposed instruction.

## II.  EXCLUDED EVIDENCE

¶ 20 Enterprise complained that the trial court excluded evidence of C&H's mismanagement and dissipation of corporate funds on gambling, boats, and other frivolous items. However, the court allowed Enterprise to offer evidence of how much was distributed to the owner or on behalf of the owner. The court properly did not admit evidence of how those funds were used. C&H correctly answers that such evidence is completely irrelevant to any issue regarding the financial condition of the company. What is the purpose of presenting the jury with evidence of frivolous spending or gambling? The only purpose we can see is to prejudice the jury by placing the owner in a bad light. The owner took certain amounts out of the company, whether he took them for frivolous spending or to give it all to charity does not change the amount taken out, nor the impact it has on the company. This proposition of error is completely without merit.

¶ 21 Likewise, Enterprise complains that the trial court would not allow evidence of an insurance payment for damaged or destroyed equipment. Such evidence violates the collateral source rule. That rule generally prevents a tortfeasor from benefitting from payments made to a plaintiff by parties other than the tortfeasor. *Triumph Trucking, Inc. v. Southern Corporate Insurance Managers*, 226 S.W.3d 466, 471 (Tex. App. 2006). In Oklahoma the same rule applies. *Estrada v. Port City Properties, Inc.* 2011 OK 30, ¶ 27, 258 P.3d 495, 505. Enterprise wanted to rebut the testimony of a witness based on the testimony of an earlier witness that C&H did not have the money to replace some of its equipment. After having heard the previous testimony, the trial judge prohibited Enterprise from attempting to rebut the testimony of the second witness based on the testimony of the first witness. This Court finds no abuse of discretion by the trial court on its decision to prohibit questioning the second witness concerning insurance payments and how that money was spent.

## III.  OBJECTION REGARDING NET WORTH OF ENTERPRISE

¶ 22 While playing a clip of a deposition, the witness responded to a question by C&H's counsel and testified that Enterprise's net worth was in the "billions." From the bench discussion it appears that the video clip was not turned off at the point C&H anticipated. C&H's counsel asked to make a record that the portion of the video clip containing the net worth response was not played. Enterprise's attorney stated that the video was not turned off until after the question had been asked and answered. The judge replied that it was played, but he did not know if the jury was able to hear it because "everyone was standing up talking and objecting." The judge continued, "I don't know if it's something we want to call attention to or tell them to disregard it at this point. If you want that instruction, I would be happy to give it." Enterprise's attorney decided not to ask for the instruction. Both cases cited by Enterprise are distinguishable. In *Chowins v. Gypsy Oil Co.*, 1939 OK 347,

¶ 4, 185 Okla. 630, 95 P.2d 586, 588, the plaintiff wanted to offer evidence concerning two companies that were not even parties to the action. The trial court excluded the evidence, which the *Chowins* opinion agreed was correct. In *Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 875 (2008), a motorist brought an action against a driver of a tractor trailer rig and the company that owned the rig. The motorist sought damages for injuries suffered in a traffic accident. The trial court entered judgment for $3,000,000.00 in favor of the motorist and passenger. The plaintiffs offered testimony taken from the deposition of Reliance's corporate representative that the company had annual sales of approximately $1.9 billion. The counsel for the defendants objected and the trial court overruled the' objection. The Texas court of appeals reduced one damage item by $6,000.00, and affirmed the rest, finding the gross sales evidence was harmless. The Supreme Court of Texas held that the error in admitting the evidence was not harmless and reversed and remanded the case for a new trial.

¶ 23 There is reason to believe that playing the testimony of the witness concerning Enterprise's net worth was inadvertent. The plaintiff's attorney did not attempt to defend it, and the trial court offered to admonish the jury, but the defendants' attorney decided against it. Enterprise asserts that testimony caused the damages awarded to C&H to be grossly inflated. There is no support for Enterprise's position on this issue. The jury's verdict fell well within the evidence offered concerning C&H's value before and after the accident, and there is no comparison to the evidence submitted and judgment rendered in the *Reliance Steel* case.

2. Texas Rules of Civil Procedure, Rule 292. Verdict by Portion of Original Jury:

"(a) Except as provided' in subsection (b), a verdict may be rendered in any cause by the concurrence, as to each and all answers made, of the same ten or more members of an original jury of twelve or of the same five or more members of an original jury of six. However, where as many as three jurors die or be disabled from sitting and there are only nine of the jurors remaining of an original jury of twelve, those remaining may render and return a verdict. If less than the original twelve or six jurors render a verdict, the verdict must be signed by each juror concurring therein.

## IV. NUMBER OF JURORS REQUIRED TO DETERMINE QUESTIONS OF GROSS NEGLIGENCE AND EXEMPLARY DAMAGES.

¶ 24 Enterprise asserts that the trial court erred in not requiring a unanimous jury to decide questions related to gross negligence and exemplary damages, and argues that since Texas differentiates between civil verdicts and verdicts awarding exemplary damages, the requirement of a unanimous verdict should be treated as substantive law. Both Texas and Oklahoma allow verdicts by a jury that are less than unanimous. However, Texas requires a unanimous jury verdict to award exemplary damages.[2] Texas case law holds that "the number of jurors required to reach a verdict is clearly a procedural matter in Texas." *Owens–Corning Fiberglas Co. v. Martin*, 942 S.W.2d 712, 721 (Tex.App. 1997). Applying Texas own case law, we hold that the number of jurors required to reach a verdict is a procedural matter and we will apply Oklahoma procedural law.[3] In addition, the Oklahoma rule is, "In a conflict-of-law analysis matters of procedure are governed by the law of the forum." *Veiser v. Armstrong*, 1984 OK 61, ¶ 7, n. 6, 688 P.2d 796, 799. We find in this regard that the trial court did not err in its decision.

## V. PREJUDGMENT INTEREST

¶ 25 Enterprise claims that the trial court erred by awarding prejudgment interest because C&H made no mention of a claim for prejudgment interest, and Texas law treats prejudgment interest as a form of equitable damages, which the plaintiff is required to plead as an element of damages. C&H answers that this is also a matter of procedural, not· substantive law, and there-

"(b) A verdict may be rendered awarding exemplary damages only if the jury was unanimous in finding liability for and the amount of exemplary damages."

3. The Oklahoma Constitution, Article 2, § 19, provides in pertinent part that "In all criminal cases where imprisonment for more than six (6) months is authorized the entire number of jurors must concur to render a verdict. In all other cases three-fourths (¾) of the whole number of jurors concurring shall have power to render a verdict. When a verdict is rendered by less than the whole number of jurors, the verdict shall be signed by each juror concurring therein."

fore Oklahoma law controls. In the appellants' Brief–in–Chief, Enterprise uses the expression, "plaintiff is required to plead." A pleading is part of procedural law. "Substantive law consists of all laws that define, describe, regulate, and create legal rights and obligations. Procedural law consists of all laws that outline the methods of enforcing the rights established by the substantive law."[4] The substantive law creates the right to prejudgment interest in specific circumstances. The procedural law instructs how to plead for the right. The method used by a litigant to request prejudgment interest is a procedural matter, and so, as explained above, Oklahoma law controls. As to whether C&H is entitled to prejudgment interest, the substantive law of Texas controls. *Flanders v. Crane Co.*, 1984 OK 88, ¶ 9, 693 P.2d 602 (Nebraska substantive law controlled, but Oklahoma procedural law applied.) The trial court did not err in its decision.

AFFIRMED.

CONCUR: REIF, C. J., KAUGER, WATT, WINCHESTER, EDMONDSON, TAYLOR, COLBERT, and GURICH, JJ.

NOT PARTICIPATING: COMBS, V.C.J.

4. Kenneth W. Clarkson, Roger LeRoy Miller, Frank B. Cross, *Business Law Text and Cases*, 12 (13th Ed. 2015).